In re Alfred PEREIRA, Debtor.

Anthony L. MATERIA, Plaintiff,

v.

Alfred PEREIRA, Defendant.

Bankruptcy No. 82–2179–JG.
Adv. No. A 83–0084.

United States Bankruptcy Court,
D. Massachusetts.

Nov. 28, 1984.

Richard N. LaSalle, Fall River, Mass., for plaintiff.

Joseph A. Callahan, Fall River, Mass., for defendant.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The plaintiff's Complaint seeks a determination that a judgment for libel he obtained against the debtor in state court in the sum of $15,000 is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The plaintiff alleges that the debt arose out of the debtor's willful and malicious injury. The debtor's Answer denies that the plaintiff's claim arose out of willful and malicious injury. A trial was held at which time the parties agreed to submit to this Court the transcript of the proceedings in the Superior Court. The debtor, Alfred Pereira, also testified.

The alleged libel arises out of a letter addressed to teamster members dated December 1, 1977, signed by four teamsters, belonging to Local 526, including the debtor, Pereira, which solicited votes in their favor for the upcoming union election. The letter criticized the plaintiff, Anthony Materia, the secretary and chief official of the union, who was running for re-election. Concerning Materia, the letter stated in pertinent part:

Is the "experienced slate" doing a job *for* you or are they doing a job *on* you? The following statements are true events that have taken place under the leadership of your "experienced slate". We would like you to judge for yourself just what kind of experience these people have.

As most of you know, and all of you should know, our union hall also houses a family restaurant and bar that is presently called the Silver Gull. At the election committee meeting on November 20th we requested that the Silver Gull be closed on December 11th, our election day. We were told that this could not be done because this was a private enter-

prise. We would like to inform you that this "private enterprise" is owned by *Anthony Materia*, as is clearly stated in the enclosed copy of the City Hall record. Inquiry at City Hall disclosed the fact that they have no record of the name of the restaurant being changed from Alfredo's Restaurant to that of the Silver Gull, or that there has been any change in ownership; therefore all tax bills are sent to Anthony Materia. Mr. Materia would have us believe that Mr. Frederick Scuilli owns the restaurant. If this is true why did Mr. Materia have the power to fire him? Mr. Materia owns this restaurant and has been converting our union dollars into his own private business. This is a *conflict of interest, misappropriation of union funds and gross misconduct in office*. If elected we will do everything in our power to get our money back.

When you arrive at the union hall to vote on December 11th, take a good look around and notice how small our hall has become. Count how many air conditioners are on our union building to cool off the customers of the Silver Gull, for as you know, the rank and file members are on recess from monthly meetings during the months of June, July and August. We paid for these air conditioners and the electric bills to run them. Also, how many tables and chairs that were bought with the building are no longer in our hall?

Those of you who pay into the Anthony J. Materia Scholarship Fund know that this fund has been in effect for three years. Many of our members are paying two or three cents an hour for every hour that they work into this fund. The fact that it is only a few cents an hour doesn't mean much to you, but it becomes an astronomical figure at the end of each year when multiplied by the number of people in our union who are paying ask you to take the following into consideration: When is the last time you have received a financial report on this fund? What brother or sister Teamster member do you know of whose child has

won a scholarship? How much are the fund administrators being paid for their services? It seems that the only people profiting from this fund are the administrators; therefore they are *doing a job on you again*.

Ask the "experienced slate" the following questions:

1. Why are Merit Dress truck drivers working for 80 cents an hour less than the National Freight Agreement calls for? Why did our secretary-treasurer tell the Merit drivers in front of their employer that they were overpaid and should take a cut in wages?

Five to six hundred of these letters were mailed and hand delivered to the union membership the day before the election. The Materia slate was defeated by the Huff slate by seventeen votes.

Prior to his defeat, Materia had been the secretary, treasurer, and chief officer of Teamsters Local 526 for many years. He was also one of the trustees of the union's health and welfare fund. In 1976 the health and welfare fund established a realty trust and purchased a building at 56 Water Street, Fall River, Massachusetts. The first floor of the building had previously housed a restaurant. The trustees voted to establish a restaurant for leasing in the building in order to bring in income for the expenses of the building. Prior to offering the restaurant for lease, the building trust, of which Materia was a trustee, selected and paid for improvements and fixtures, including air conditioners, for the restaurant. In the spring of 1976, the realty trust leased the restaurant to Fred Sciulli who established a restaurant known as Alfredo's. The arrangement was a tenancy at will for $100 a month. Materia's daughter and son were majority stockholders in the restaurant corporation. The restaurant was unsuccessful and closed in summer of 1976. In the fall of 1976 Materia signed a note to the First National Bank of Bristol. The loan proceeds were used to buy equipment for the restaurant. Materia stated that he borrowed the money personally in order to make the restaurant lease and

premises more attractive to potential buyers. A financing statement concerning this loan transaction was recorded with the Fall River City Clerk on October 15, 1976. It states the debtor's name as "Materia, Anthony d/b/a Alfredo's Restaurant."

Upon the closing of Alfredo's, the union advertised the restaurant premises for lease. Two individuals, Crossley and Rebello entered into a written lease of the restaurant. Materia's daughter loaned them $5,000 to fund the purchase. They did business as The Silver Gull from 1976 to 1979 and were operating the restaurant at the time the subject letter was published.

Materia testified before the Superior Court that he never had any ownership interest in The Silver Gull or in Alfredo's.

Harold Huff was the author of the subject letter. He believed he was correct in stating that Materia was converting union dollars to his own use and was guilty of conflict of interest because of the financing statement which stated that Materia was doing business as Sciulli's. Two days prior to the election, Huff held a meeting at his home with the other candidates running on his slate and presented them with the proposed letter for their signatures. Pereira questioned him about his proof for the statements about the restaurant and he showed them the financing statement and copies of health and welfare checks for equipment which Huff said went to Materia's home. Based on Huff's request and the documents, Pereira and the others signed the letter.

The evidence on the subject of the scholarship fund was that no scholarships would be awarded until the fund had accumulated $10,000. As of the date of the subject letter, it had not reached this amount. Employers, not employees, contributed to the fund. There was no evidence that Materia profitted from the scholarship fund. With respect to the Merit drivers, Materia explained that he negotiated with the company when it was in financial trouble. He agreed to a wage reduction in order to save jobs.

The accountant who annually audited the books and records of the health and welfare fund testified that there was no evidence of misappropriation during Materia's tenure from 1976 to 1978.

As set forth above, the issue presented is whether Pereira's debt to Materia evidenced by the state court judgment for libel is nondischargeable pursuant to 11 U.S.C. § 523(a)(6) because of the debtor's willful and malicious injury.

■ 11 U.S.C. § 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The term "entity" includes a person. 11 U.S.C. § 101(14). For the purposes of this exception to discharge, "willful" means intentional and "malicious" means a conscious disregard of one's duties. *See In Re Trudeau,* 35 B.R. 185 (Bankr.D.Mass.1983).

■ Injury committed in reckless disregard of a person's rights does not rise to the level of willful and malicious injury. H.R.Rep.Mo. 595, 95th Cong., 1st Sess. 365 (1977), 1978 U.S.Code Cong. and Admin. News at 5757, 5787. On the other hand, proof of malice does not require a finding of hatred, ill-will, or specific intent to harm. *See, In Re Ertz,* 28 B.R. 1020 (D.S.C.1983). The intentional tort of libel may be considered a willful and malicious injury if it can be demonstrated that the libel was committed with the requisite willfulness and malice. Malice in the bankruptcy sense means that the author knew the statements made were false. *In Re Kasler,* 611 F.2d 308 (9th Cir.1979). Reckless disregard for the truth or falsity of a statement does not meet the standard of willful and malicious injury.

■ The plaintiff Materia requests that the Court accept the libel judgment as having established willful and malicious injury. His request is inappropriate. In order to give res judicata or collateral estoppel effect to the state court judgment, the relevant issues in this nondischargeability proceeding, including willfulness and malice,

must have been litigated and determined in the prior proceeding. *See In Re Longo,* 37 B.R. 900, 901 (Bankr.D.Mass.1984). Thus, where the prior judgment omits the essential elements of nondischargeability, the prior judgment cannot bind the bankruptcy court. *Comm. v. Hale,* 618 F.2d 143, 147 (1st Cir.1980).

■ Libel consists of the publication of defamatory matter by written or printed words. *J. Nolan,* 37 Mass.Practice Series, § 99, at 119 (Supp.1983). Private persons may recover for libel without proof of intent but merely on proof of publication of any matter considered libel per se or on proof of the negligent publication of a defamatory falsehood. *See Stone v. Essex County Newspapers, Inc.* 367 Mass. 849, 330 N.E.2d 161 (1975). Public figures, in contrast, must prove "malice" to recover for libel, which is defined as publication with knowledge that a statement was false or reckless disregard for the falsity of the statements. *New York Times v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964).

■ On the issue of the effect of the judgment in the present case, there is no doubt that the question of libel was litigated in state court and that the result of the trial was a verdict of libel against the debtor. However, it is not clear from the state court proceedings that the issues of willfulness and malice were determined. The plaintiff's state court complaint alleged both reckless and malicious conduct on the part of the defendants. The jury made no findings of these issues, having found in favor of the plaintiff in the amount of $15,000. No inference of willful and malicious conduct can be drawn from the verdict. Since under Massachusetts law a verdict for libel does not necessarily include a finding of willful and malicious injury, and since there is no indication from the state court record that such findings were made, the judgment does not establish the elements of the § 523(a)(6) exception to discharge. Accordingly, this Court is required to make an independent determination of whether the debtor's involvement in

the publication of the alleged defamatory material gave rise to a debt for willful and malicious injuries.

In order to make this determination this Court would have preferred a trial with all of the witnesses involved in the case, to enable me to assess the credibility of the witnesses and to ask questions of the witnesses. The parties chose, however, to submit only the state court transcripts, presenting only the debtor as a witness before this Court. A review of the transcripts submitted by the parties and the debtor's testimony leads me to the conclusion that the injury was not occasioned by the debtor's willful and malicious conduct. It is clear that the debtor executed the letter without knowledge of the falsity of the representations concerning Materia's involvement in the restaurant. Pereira reasonably believed that there was support for the statement having relied on the representations of Huff and on the financing statement which referred to Materia as "doing business" as Alfredo's. Pereira may have been negligent or even reckless in relying on this evidence, but it cannot be said that he knew of the statement's falsity so as to rise to the level of willful and malicious libel.

Concerning the two other statements which the plaintiff complained of in his state court complaint, there was no evidence presented to this Court or to the state court that Pereira knew that these statements were false. Accordingly, the plaintiff has not sustained his burden of proving that the debt to the plaintiff was for willful and malicious injury.

Judgment shall enter for the defendant in this adversary proceeding.