In re Melissa L. BRYAN, Debtor.

## FIRST CITIZENS NATIONAL BANK, Plaintiff,

v.

## Melissa Louise BRYAN, Defendant.

Bankruptcy No. 95–11365–GHB.

Adversary Proceeding No. 96–5103.

United States Bankruptcy Court,
W.D. Tennessee.
Eastern Division.

April 17, 1997.

Mark D. Johnston, Dyersburg, TN, for Plaintiff.

Albert B. Merkel, Jackson, TN, for Debtor/Defendant.

## MEMORANDUM OPINION AND ORDER RE COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

G. HARVEY BOSWELL, Bankruptcy Judge.

On May 28, 1996, First Citizens National Bank ("Bank") filed a Complaint to Determine Dischargeability of Debt. In the complaint, the Bank alleges that the debtor should be denied a discharge pursuant to 11 U.S.C. § 523(a)(6). Specifically, the Bank avers that the debtor caused abusive depreciation to the automobile by tearing out its interior and by accumulating mileage in excess of 170,000 miles. The debtor filed an Answer to Complaint to Determine Dischargeability of Debt on July 2, 1996. In the answer, the debtor denies that she committed any grounds for nondischargeability under § 523(a)(6). This Court conducted a hearing in this adversary proceeding on March 7, 1997. Federal Rules of Bankruptcy Procedure 7001 et seq. This is a core proceeding. 28 U.S.C. § 157(b)(2). The following shall serve as this Court's Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### I. Findings of Fact

On or about October 27, 1992, the debtor purchased a 1990 Nissan 280 SX automobile from Rick Hill Nissan in Dyersburg, Tennessee. The debtor financed $9,647.00 of the $11,517.00 purchase price through the Bank. The Bank secured this loan with a lien on the automobile. At the time of the purchase, the automobile's odometer reading was 44,705 miles. On March 31, 1995, the debtor refinanced the 1992 loan by signing a note with a principle balance of $4,468.71. The odometer reading at that time was 120,428 miles.

On June 26, 1995, the debtor filed a voluntary petition for relief under chapter 13. The debtor listed the Bank as a secured creditor with a claim of $4,355.00. The claim was allowed in full at 8% per annum with

monthly payments of $107. The Court confirmed the plan on August 3, 1995. The Bank never received any payments through the chapter 13 plan. On March 11, 1996, the debtor converted her case to chapter 7.

On April 17, 1996, the Bank took possession of the automobile. When the Bank attempted to sell the automobile, however, the Bank bid $50.00, and it was unable to secure a higher bid from anyone else. The Bank avers that the debtor caused abusive depreciation to the automobile by tearing out its interior and by accumulating mileage in excess of 170,000 miles.[1] The Bank cites this as the cause for its inability to secure a bid higher than $50.00 at the UCC–1 sale. The balance due on the automobile at this time is $5,318.68, which includes the costs for repossessing the automobile incurred by the Bank.

## II. Conclusions of Law

The Bank contends that the debt owed to it by the debtor is nondischargeable pursuant to § 523(a)(6) of Title 11 of the United States Code, which states: "(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... (6) for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In order to meet its burden, the Bank must establish that any damage to the car caused by the debtor was deliberate or intentional. *Perkins v. Scharffe,* 817 F.2d 392, 394 (6th Cir.), *cert. denied,* 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987) (defining a willful act as a "deliberate and intentional act which necessarily leads to injury"); *see also Wheeler v. Laudani,* 783 F.2d 610, 615 (6th Cir. 1986) (stating that "malicious" means "in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm").

■ The Bank alleges that the photographs it introduced into evidence, Exhibit 1, prove the Bank's allegations of willful and malicious injury. The photographs show that the car battery is missing, that there is a tear in the upholstery on the driver's seat, and that the lid to the console is detached

and laying in the seat. The Bank also contends that the excessive mileage placed on the car by the debtor is further proof of the debtor's abuse to the car.

After reviewing the facts of this case, the Court concludes that the Bank has failed to meet its burden. The debtor testified that she had been having mechanical problems with the car, and, while she paid for many of the repairs, *see* Exhibits 4 and 6, she had reached the point where she was unable to pay for additional necessary repairs. Thus, the Court finds that the debtor's failure to replace the car battery does not rise to the level of willful and malicious injury to the Bank. Further, the Court is not convinced that the tear in the driver's seat and the fact that the console lid is not in its proper place is sufficient proof of deliberate and intentional misconduct by the debtor.

The most compelling argument made by the Bank involves the mileage placed on the car by the debtor. When the debtor purchased the car in October 1992 the odometer reading was 44,705. When the Bank repossessed the car in April 1996 the odometer reading was 172,472. In approximately 3½ years, the debtor put almost 130,000 miles on the car, the equivalent of approximately 3,700 miles per month. The Court notes, however, that there was no mileage restriction in either the original promissory note or the refinancing agreement. While to some people 3,700 miles per month may seem excessive, the court finds that the Bank did not prove that the debtor deliberately and intentionally drove the car excessively in conscious disregard of her duties or without just cause or excuse. *See Wheeler,* 783 F.2d at 615. Cars are made to be driven, and without any restriction within the promissory note or refinancing agreement with the Bank, the debtor was free to drive the car as she wished. As a result, the Court concludes that the Bank did not prove its case under § 523(a)(6).

■ However, this court finds that the Bank did not receive payments while the debtor was in chapter 13. The Bank was to have received $107 per month for eight months. Pursuant to § 1327(a), the con-

---

1. The Bank submitted photographs of the car which the Bank took after the repossession. Collective Exhibit 1.

firmed plan binds the debtor and her creditors. Thus, the Bank is entitled to the payments is would have received while the debtor was in chapter 13 had the debtor made her plan payments. During the pendency of her chapter 13 case, the debtor, in essence, drove the Bank's collateral without giving any consideration to the Bank. This court will not allow debtors to utilize a creditor's collateral for a period of eight months without compensating the creditor for that use. The debtor was bound by the confirmed plan, and this Court will not allow her to circumvent that obligation.

The court, therefore, holds that the debtor must pay the Bank $856 for the use of the vehicle while she was in chapter 13. The court further holds that the remainder of the debt owed to the Bank is discharged.

### III. Order

It is therefore ORDERED that a nondischargeable judgment for $856 is granted to First Citizens National Bank against the Debtor, Melissa L. Bryan. The remainder of the debt is discharged.

IT IS SO ORDERED.