In Re Vickie Lynn MARSHALL,
Debtor.

E. Pierce Marshall, Plaintiff,

v.

Vickie Lynn Marshall, Defendant.

Vickie Lynn Marshall,
Counter-claimant,

v.

E. Pierce Marshall, Counter–
Defendant.

No. SA CV 01–97 DOC.
Bankruptcy No. LA 96-12510 SB.
Adversary No. AD 96-1838 SB.

United States District Court,
C.D. California.

Dec. 21, 2001.

Joseph A. Eisenberg, Julia J. Rider, Robert E. Mangels, Jeffer Mangels Butler & Marmaro, Los Angeles, CA, G. Eric Brunstad, Jr., Hebb & Gitlin, Hartford, CT, John P. Melko, Verner Liipfert Bernhard McPherson Hand Chartered, Houston, TX, Rusty Hardin, Rusty Hardin & Associates, Houston, TX, Jerry Don Jackson, B. Lee Ware, Ware Snow Fogel & Jackson, Houston, TX, for plaintiff.

Rex S. Heinke, Sheila S. Kato, Jessica M. Weisel, Jennifer C. Yang, Greines Martin Stein & Richland, Los Angeles, CA, Philip W. Boesch, Jr., Philip W. Boesch Jr. Law Offices, Marina De Rey, CA, for defendant.

## ORDER DENYING COUNTER–DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

CARTER, District Judge.

Before the Court is Plaintiff and Cross–Defendant E. Pierce Marshall's (Pierce)[1] motion for summary judgment based on res judicata or collateral estoppel. After reviewing the moving, opposing, and replying papers, and for the reasons set forth below, the Court DENIES the motion.

### I.

### BACKGROUND

Defendant and Cross–Claimant Vickie Lynn Marshall (Vickie) is the surviving widow of J. Howard Marshall II (J. Howard), who died on August 4, 1995. Vickie and J. Howard were married on June 27, 1994, after two and a half years of courtship. At the time of their marriage, Vickie was 26 years old and J. Howard was 89 years old. Vickie, also known as Anna Nicole Smith, is a figure of some notoriety because of her career as a model. Prior to their marriage, J. Howard had assisted in developing her career. J. Howard is also a figure of some notoriety in his own right, as he was said to be either the richest or second-richest man in Texas at the time of his death. His wealth was held in several different ways, including a living trust, and the exact amount and location of his wealth

---

1. As all the principals in this matter share the same last name, the Court will refer to the parties by their given names, as is customary in cases involving family members.

at the time of his death is disputed, but estimates put it at as high as $2 billion.

It is undisputed that J. Howard lavished great sums of money on Vickie during their courtship and marriage. Nonetheless, he did not explicitly provide for Vickie in his will. However, according to Vickie, J. Howard promised Vickie that she would receive substantial wealth and be taken care of. J. Howard, Sr.'s son from a former marriages, Pierce, contests whether J. Howard ever made such promises.

The magnitude of the sums of money involved in J. Howard's estate has sparked intensely contested litigation on several fronts. First, some probate proceedings took place in Louisiana, but were dismissed some time ago after a jurisdictional ruling by the Louisiana Supreme Court. Second, the estate is currently going through probate in Texas. Trial in the probate proceedings has concluded, and the jury has returned a verdict. Judgment was entered on August 15, 2001. After cross-motions by both Vickie and Pierce, and an order from the bankruptcy court holding that parts of the judgment violated Vickie's discharge in her bankruptcy proceedings, the Texas probate court entered a modified judgment on October 25, 2001. Both sides filed cross-motions for a new trial, and the Texas probate court issued a second modified judgment on December 7, 2001.

Third, on January 25, 1996, a few months after J. Howard's death, Vickie filed for Chapter 11 bankruptcy here in the Central District of California. This bankruptcy case engendered the current adversary proceeding. On May 7, 1996, Pierce filed an adversary complaint seeking a determination that Vickie owed him a

debt that was nondischargeable. Pierce alleged that Vickie had defamed him when, prior to the time she filed for bankruptcy and with her complicity, some of her lawyers told members of the press that Pierce had used forgery, fraud, and overreaching to gain control of Howard's assets.[2] On June 11, 1996, Pierce filed a proof of claim in the bankruptcy case. He made the claim by attaching a copy of the complaint from his adversary proceeding.

Vickie responded to both the adversary complaint and the proof of claim. As to the adversary proceeding, on June 14, 1996 she answered, in part asserting truth as a defense. She also asserted counterclaims for fraudulent transfer, an injunction, conversion, tortious interference with inheritance, breach of fiduciary duty, abuse of process, fraud, promissory estoppel, breach of contract (third-party beneficiary), the imposition of a constructive trust, an accounting, and indemnity and contribution. As to Pierce's proof of claim, Vickie filed an objection on July 3, 1996.

On September 22, 1998, Pierce filed a motion to withdraw the reference for his adversary proceeding. This motion was assigned to Judge Keller for determination. Judge Keller issued a ruling on October 21, 1998, but he then vacated that order and issued a new ruling on March 10, 1999. The March 10, 1999 ruling denied Pierce's request to withdraw the reference. The effect of this ruling was that the Pierce adversary proceeding remained in the bankruptcy court in its entirety.

On November 5, 1999, the bankruptcy court granted summary judgment for Vickie on Pierce's claim. It found that Vickie had published no statements about

---

**2.** Debts based on "willful and malicious injury," such as intentional torts, are not dischargeable. 11 U.S.C. § 523(a)(6). Damages for libel or defamation are not dischargeable

when the statements were published with knowledge of their falsity. *Wheeler v. Laudani,* 783 F.2d 610, 615 (6th Cir.1986).

Pierce, had not ratified any statements about Pierce made by her attorneys, and was not otherwise vicariously liable for any statements her attorneys had made about Pierce. Thus, it held that Vickie had not committed a willful or malicious act under 11 U.S.C. § 523(a)(6).

Vickie's counterclaims against Pierce went to trial in the bankruptcy court in the fall of 1999. Approximately ten months later, on October 6, 2000, the bankruptcy court issued an Amended Memorandum of Decision Following Trial ("Amended Decision"). *In re Vickie Lynn Marshall,* 253 B.R. 550 (Bankr.C.D.Cal.2000). Based on the evidence at trial and in large part on facts found against Pierce as sanctions for his discovery abuses, the bankruptcy court concluded that Pierce tortiously interfered with Vickie's expectation of an *inter vivos* gift. The bankruptcy court awarded Vickie $449,754,134 in compensatory damages. Subsequently, the bankruptcy court awarded $25 million in punitive damages and issued a judgment. After the judgment was entered in the bankruptcy court, Vickie voluntarily dismissed her claims against Pierce in the Texas probate proceedings for tortious interference with an inheritance or *inter vivos* gift.

Pierce appealed the bankruptcy court's judgment to this Court. On June 19, 2001, this Court entered an Amended Order Regarding Subject Matter Jurisdiction. *Marshall v. Marshall (In re Marshall),* 264 B.R. 609 (C.D.Cal.2001). The Court reversed the bankruptcy court's ruling that this was a core matter pursuant to 28

U.S.C. § 157. Accordingly, the Court deemed the bankruptcy court's Amended Memorandum of Decision to be proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1). Consistent with that provision, the Court began to undertake a *de novo* review of the bankruptcy court's proposed findings. On October 5, 2001, this Court held a hearing to review whether the bankruptcy court's evidentiary sanctions were proper.[3] The Court determined that it could not at that point determine that the evidentiary sanctions were appropriate, and therefore would allow additional evidence to be presented at the hearing on the *de novo* review of the merits of Vickie's claim. Pierce was also ordered to produce several hundred boxes of documents subject to previous orders to compel discovery.

Pierce now moves for summary judgment, asserting that Vickie's claims are precluded by the doctrine of claims preclusion by the judgment in the Texas probate proceedings. Alternatively, Pierce asserts that Vickie is estopped from arguing the key elements of her claim for tortious interference with an *inter vivos* gift under the doctrine of issue preclusion because of the Texas probate judgment.

## II.

## DISCUSSION

▌ The Full Faith and Credit Act requires the Court to give state court judgments the same effect as a court of that state would. 28 U.S.C. § 1738.[4] The

---

3. The Court has at times referred to this as the bankruptcy court's Establishment Order.

4. This same provision requires that the Texas probate court give full faith and credit to the judgments of federal courts. At oral argument, Pierce represented that Vickie had never requested the Texas probate court give preclusive effect to Vickie's then-operative

judgment from the bankruptcy court. That representation was inaccurate. On January 29, 2001, Vickie's Texas counsel requested the Court apply res judicata to the bankruptcy Court's judgment. The Texas probate court held the following exchange:

> **THE COURT:** I don't think I have an obligation to give full faith and credit to a

Court must give preclusive effect to judgments whenever a court of the state that the judgment issued from would give the judgment preclusive effect. *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 416, 66 L.Ed.2d 308 (1980).

> The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel. Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876). Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).

*Allen*, 449 U.S. at 96, 101 S.Ct. at 414–415 (footnote omitted).

### A. Res Judicata

■ The doctrine of *res judicata*[5] does not apply here. Vickie did not litigate, and was not required to bring, her claim for interference with an *inter vivos* gift in Texas. Texas Rule of Civil Procedure 97, which is nearly identical to Federal Rule of

---

court's jurisdiction after this [the Texas probate case] started....

MR. CUNNINGHAM [Vickie's Texas counsel]: The judgment is now final, and the judgment has been appealed, and we are now saying based on that it's entitled to that....

The Court then ruled that Vickie was "not to raise any issue about the California case, whatsoever, in answer to any question, no matter how appropriate she things that to be...." *See* Statement of Facts (Final Version) 1/29/01 Marshall v. MacIntyre, No. 276,-815 (Tex. Probate Harris County), at 29, 48; Testimony from Texas Probate Court Trial, Volume 2 of 3, Testimony of Vickie Marshall.

---

Civil Procedure 13(a), includes four specific exceptions to the compulsory counterclaim requirement, one of those exceptions is that a party need not bring a counterclaim if it is subject to a pending action. Here, Vickie's claim was subject to the present adversary proceeding. It is quite literally hornbook law that "[a] party who fails to interpose a counterclaim that falls under one of these exceptions will not be barred from interposing that claim in future litigation." Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, 6 *Federal Practice and Procedure, Civil* § 1411, at 79 (2d ed.1990). Because Vickie was not required to bring her claim in the Texas probate court, she cannot now be precluded from litigating it in the bankruptcy proceeding. *See* Tex R. Civ. P. 97; *see also Cromwell*, 94 U.S. at 352. Therefore, only the doctrine of collateral estoppel could apply here.[6]

### B. Requirement of a Final Judgment

■ For both *res judicata* and collateral estoppel, a previous judgment must be final in order to have preclusive effect. *Allen*, 449 U.S. at 96, 101 S.Ct. at 414–415. "In a 1986 landmark case, the Texas Supreme Court adopted the rule of section 13 of the Restatement (Second) of Judgments and held that for *res judicata* and collater-

---

**5.** *Res Judicata* is used by different authorities to refer to the preclusive effects of judgments generally, or alternatively as the preclusive effect that a judgment has on other claims that could have been brought in the prior proceeding. This second definition is modernly referred to as claims preclusion. When used in this order, the term *res judicata* shall be deemed to encompass only the doctrine of claims preclusion.

**6.** Collateral estoppel is the doctrine modernly referred to as issue preclusion, and those terms should be considered synonymous for the purpose of this order.

al estoppel purposes, judgments become final once the trial court loses plenary power over the judgment." *Gulf Ins. Co. v. Clarke,* 902 S.W.2d 156, 159 (Tex.App. 1995) (citing *Scurlock Oil Co. v. Smithwick,* 724 S.W.2d 1, 6 (Tex.1986)).

■ Here, there is no final judgment under Texas law. A judgment is only final once the trial court loses the power to alter or amend the judgment. *Id.* (quoting *Street v. Honorable Second Court of Appeals,* 756 S.W.2d 299, 301 (Tex.1988)). Under Texas law, a trial court can grant a new trial or amend the judgment if a motion is filed by any party within thirty (30) days of the judgment being signed. Tex.R. Civ. P. 329b(a), (e). The trial court's power to alter the judgment lasts seventy-five (75) days after the motion is filed. Tex.R. Civ. P. 329b(c). Here, the Texas probate court entered its second modified judgment on December 7, 2001. The parties to that action therefore have thirty (30) days in which to file motions for a new trial or motions to amend the judgment, and the Texas probate court would therefore have an additional seventy-five days to rule on those motions. Until that period lapses, the Texas probate court has plenary power to change its judgment, and the judgment is therefore not final for *res judicata* or collateral estoppel purposes under Texas law. *Scurlock Oil,* 724 S.W.2d at 6.

Pierce argues that the Texas probate court's judgment should be considered final because it has consistently denied Vickie's motions for a new trial and the probate judge has stated that it will deny future motions. As both a matter of fact and law, Pierce is incorrect. As Vickie's counsel points out, paragraph 3.42 of the second modified judgment granted Vickie's

request that she not be required to pay temporary administrator fees. Thus, Pierce's bold assertion that she has always been denied relief is incorrect. Although Pierce insists that the Texas probate court will not grant any of Vickie's future motions, this Court will not attempt to prognosticate the actions of other judges.[7] As long as the Texas probate court has plenary power to modify the judgment, it is improper for this Court to assume that it will not use that power.

Because there is no final judgment in the Texas Probate proceeding, it cannot have preclusive effect.

## C. Timeliness of Pierce's Motion

■ Pierce's motion must also be denied because it is untimely. In fact, it is two years late. The trial in this matter was had in the fall of 1999.

■ Although the evidentiary portion of the Court's *de novo* review has the look and feel of a trial, it is not the trial. The bankruptcy court tried the matter consistent with the provisions of 28 U.S.C. § 157(c)(1). The Court is now "reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1). As the Court noted in its August 27 order in this matter, the Court has broad discretion to determine how to go about reviewing the record in this matter, so long as it conducts an actual review. 1 Collier on Bankruptcy ¶ 3.03[3][b]; *Castro v. Perez (In re Castro),* 919 F.2d 107, 108 (9th Cir.1990). A hearings is not required when reviewing the bankruptcy court's proposed findings of fact and conclusions of law under section 157(c)(1). *See United States v. Remsing,*

---

**7.** No doubt Pierce thought that the probate judge would not grant Vickie's motions after

it entered its first Modified Judgment.

874 F.2d 614, 618 (9th Cir.1989); *see also* 9 Collier on Bankruptcy ¶ 9033.07.

There is no question that this Court could have reviewed the record as submitted in the proceedings below. That, in fact, appears to be the general practice of district courts when reviewing the proposed findings of fact and conclusions of law of a bankruptcy court in a non-core matters. Instead, however, the Court has decided to hold hearings and elicit testimony because of the unusual situation presented in this case. When dealing with the close personal relationships involved here, issues of credibility are central to the case. Moreover, the long and convoluted nature of the record in this case counsels in favor of the Court reviewing evidence directly. Finally, the trial of this matter was governed by evidentiary sanctions against Pierce that essentially determined the questions of liability. Here, however, additional documents have been produced, and the Court has held its decision on sanctions in abeyance. Accordingly, both sides have been afforded the opportunity to present evidence that was not available in the bankruptcy proceedings. That opportunity, however, does not eliminate the previous proceedings.

At oral argument, Pierce argued that if an appellate court ordered a new trial, then the trial court could give preclusive effect to the judgment of another court entered in the intervening time. The proceedings in this Court, however, are not a trial at all. In a trial, the Court would evaluate the issues anew, without reference to previous proceedings. Here, however, the Court has reviewed the record of the proceedings below. The parties are not required to establish every fact from evidence put in front of this Court, as the Court will rely on evidence adduced in the bankruptcy court. At a trial, the parties would both be afforded the opportunity to put on the entirety of their cases. Here, they are limited to the witnesses that the Court has directed. Testimony from other witnesses is not a matter of right, but will be permitted only in the Court's discretion, based on what it believes is important for reviewing the record.

The Court cannot ignore the fact that the parties have tried this case in the bankruptcy court, nor can its hearings supplant that trial. Doing so would eviscerate the jurisdiction that Congress extended to bankruptcy courts and undermine the scheme for the efficient resolution of bankruptcy matters that Congress set forth in section 157.[8]

▮▮▮ The Court is not aware of any authority, nor does Pierce's counsel point to any, that would support the proposition of applying *res judicata* or collateral estoppel *after* a trial has been had. The reason is obvious. *Res judicata* and collateral estoppel have "the dual purpose[s] of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). The Supreme Court, "and other courts have often recognized, *res judicata* and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by

---

**8.** If anything, when a district court reviews proposed findings of fact and conclusions of law in a non-core matter pursuant to 28 U.S.C § 157(c), the situation is more akin to an appeal. Pleadings and motions regarding the pleadings have been filed. Discovery is taken under the supervision of the bankruptcy judge, dispositive motions are ruled on, issues of law are argued, and eventually evidence is taken. The extraordinary nature of these proceedings does not alter the statutory scheme.

preventing inconsistent decisions, encourage reliance on adjudication." *Allen*, 449 U.S. at 96, 101 S.Ct. at 414–415.

■ Granting Pierce's motion at this stage, after a full trial had been conducted, would do nothing to further those interests. Once a trial has been conducted, there is no judicial economy to applying *res judicata* or collateral estoppel, no needless litigation has been prevented, few, if any judicial resources have been saved, and the parties have in no way spared themselves (or the courts in three states) of the vexation of multiple lawsuits. A motion to dismiss or to grant summary judgment must therefore be brought before a case has proceeded to trial. Pierce cannot now short-circuit the proceedings under the guise of *res judicata* or collateral estoppel, more than two years after it would be appropriate.[9]

## D. Fundamental Fairness Requires Denying Pierce's Motion

Once Vickie had obtained judgment in the bankruptcy court, she voluntarily dismissed her claims in the Texas Probate proceedings. The bankruptcy court's specifically ordered that her $449 million award be offset by any amount she ob-

tained in the Texas Probate proceedings. She therefore had no motivation to litigate the issues in the Texas Probate proceedings.[10] Binding her now to those findings would be fundamentally unfair.

■ When dealing with issues of *res judicata* and collateral estoppel, "many of the abstract rules must be informed by a wise sense of real-world affairs and a healthy skepticism about the capacities of any single litigation to settle relationships beyond the immediate dispute." Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, 18 *Federal Practice and Procedure, Juris* § 4400, at 4 (2d ed.1981). Those remarks are particularly apt when applied to the present case. The real-world considerations lead to the conclusion that Vickie should not be barred from making her arguments in this forum, which was originally chosen by Pierce when he brought his complaint, and which is the only one she has actively sought relief in.

## E. Identity of Issues

■ Pierce cites *Neill v. Yett*, 746 S.W.2d 32, 35 (Tex.App.1988), for the proposition that the Texas probate court's finding that J. Howard had testamentary ca-

9. At oral argument, Pierce misapprehended what the Court meant by the issue of timeliness. He argued that collateral estoppel can be raised late in the proceedings, even on appeal. Of course, Pierce does not mean to make the utterly absurd suggestion that a first obtained judgment can be reversed on appeal by an appellate court accepting as established those facts determined at a later trial in another case, and then precluding, *ex post*, the evidence submitted in the first trial. Such a proposition would make every judgment infirm. The Court does not suggest in this order that Pierce has waived his claim by bringing it too late, but only that the judgment on which he relies was rendered too late in the proceedings in this case for collateral estoppel to apply.

The Court is not unmindful of the fact that Pierce could not have brought this motion two years ago, as the probate matter had not even been tried in Texas. That fact, however, does not support Pierce's position, but only furthers the point that in the unusual case where litigation is proceeding simultaneously down two different paths (a situation which is unlikely to arise absent federal bankruptcy jurisdiction), *res judicata* and collateral estoppel are not appropriate and serve only to create a race to judgment.

10. This also raises the question of whether the issues that Pierce seeks to preclude were fully and fairly litigated in the Texas Probate proceedings, a requirement for applying collateral estoppel.

pacity and intent, and that Pierce did not exercise undue influence over his father, should bind this Court. *Neill* deals with tortious interference with the expectancy of an inheritance. Vickie's claim, however deals with the interference of an *inter vivos* gift. When dealing with an *inter vivos* gift, the relevant state of mind is not J. Howard's testamentary intent, but his donative intent during his lifetime. Thus, while it might be the province of the Texas probate court to determine what J. Howard intended to do with his estate when he died, the question before this Court is what he intended to do with it while he was still alive.

## F. Violation of the Discharge

Vickie finally contends that the Texas Probate judgment violates Vickie's discharge in her bankruptcy proceedings. Both parties agree, although for different reasons, that the bankruptcy court, not this Court, should make that determination in the first instance. That matter is for the bankruptcy court. However, if the judgment is in violation of Vickie's discharge, this Court could not give any preclusive effect to it.

## III.

## CONCLUSION

Accordingly, Pierce's motion for summary judgment is DENIED.

IT IS SO ORDERED.