**Opinion issued July 14, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-02-00114-CV

————————————

**HOWARD STERN AS EXECUTOR OF THE ESTATE OF VICKIE LYNN MARSHALL, Appellant**

**V.**

**ELAINE MARSHALL AS INDEPENDENT EXECUTRIX OF THE ESTATE OF E. PIERCE MARSHALL, ROBERT MCINTYRE AS TEMPORARY ADMINISTRATOR OF THE ESTATE OF J. HOWARD MARSHALL, II, APPLICATION TO APPOINT ELAINE MARSHALL PENDING, IV ELAINE MARSHALL AS TRUSTEE OF THE MARSHALL GRANDCHILDREN'S TRUST FOR THE BENEFIT OF E. PIERCE MARSHALL, JR., ELAINE MARSHALL AS TRUSTEE OF THE MARSHALL GRANDCHILDREN'S TRUST FOR THE BENEFIT OF PRESTON MARSHALL, E. PIERCE MARSHALL, JR., ELAINE MARSHALL, AND PRESTON MARSHALL AS TRUSTEES OF THE MARSHALL PETROLEUM, INC. STOCK HOLDING TRUST, E. PIERCE MARSHALL, JR., ELAINE MARSHALL, AND PRESTON MARSHALL AS TRUSTEES OF THE MARSHALL HERITAGE FOUNDATION AND THE MARSHALL LEGACY FOUNDATION, ELAINE MARSHALL AS TRUSTEE OF THE BETTYE B. MARSHALL LIVING TRUST, ELAINE MARSHALL AS TRUSTEE OF THE J. HOWARD MARSHALL, II, MARITAL TRUST NUMBER TWO, ELAINE MARSHALL AS TRUSTEE**

**OF THE E. PIERCE MARSHALL FAMILY TRUST CREATED UNDER THE BETTYE B. MARSHALL LIVING TRUST INDENTURE DATED OCTOBER 30, 1990, ELAINE MARSHALL INDIVIDUALLY ELAINE MARSHALL AS TRUSTEE OF THE MARSHALL GRANDCHILDREN'S TRUST FOR THE BENEFIT OF E. PIERCE MARSHALL, JR., ELAINE MARSHALL AS TRUSTEE OF THE MARSHALL GRANDCHILDREN' TRUST FOR THE BENEFIT OF PRESTON MARSHALL, E. PIERCE MARSHALL, JR., PRESTON MARSHALL, TROF, INC., FINLEY HILLIARD, ELAINE MARSHALL AND STEPHEN COOK AS TRUSTEES OF THE J. HOWARD MARSHALL, II LIVING TRUST, E. PIERCE MARSHALL, JR., ELAINE MARSHALL AND PRESTON MARSHALL AS TRUSTEES OF THE MARSHALL PETROLEUM, INC. STOCK HOLDING TRUST, Appellees**

---

**On Appeal from the Probate Court No. 2**
**Harris County, Texas**
**Trial Court Case No. 276815402**

---

**O P I N I O N**

This is an appeal from a probate court judgment. We reverse the attorneys' fees awarded in favor of one of the appellees and render judgment that appellee take nothing on that claim. We additionally modify the trial court's judgment and affirm the judgment as modified.

**BACKGROUND**

J. Howard Marshall II (Marshall II) died on August 4, 1995, in Houston, Texas at the age of 90. He was survived by three heirs: his widow, Vickie Lynn

2

Marshall (a/k/a Anna Nicole Smith) ("Vickie"), and two sons, J. Howard Marshall, III ("Marshall III") and E. Pierce Marshall ("Pierce").

## A. Pierce's Application for Probate of Marshall II's Will and Codicil in Texas

On August 8, 1995, on a Petition for Probate of Foreign Testament filed by Pierce and Finley Hilliard (who were both named as executors in Marshall II's will), a Louisiana district court signed an Order for Probate of Foreign Testament and Codicil recognizing Marshall II's December 22, 1992 will and June 11, 1993 codicil as valid "in form under the laws of the state of Texas" and ordering that Pierce and Hilliard "be confirmed as testamentary co-executors . . . to serve without bond . . . and that letters testamentary are to be issued to" Pierce and Hilliard.

On August 16, 1995, Pierce and Hilliard filed—in Texas probate court—a joint Application for Probate of Will and Codicil and for Appointment of Independent Co-executors. That application stated that, "[p]rior to his death, the Decedent transferred all of his assets to a trust, known as the J. Howard Marshall, II, Living Trust; however, there is a necessity for an administration of this Estate in Texas as there are claims owing to the Estate and there may be claims against the Estate." That application attached a copy of the Louisiana probate order and requested that the Texas probate court admit the will and codicil into probate and that Letters Testamentary as Independent Co-Executors without bond be issued to

3

Pierce and Hilliard. In an amended application in the Texas probate court, Pierce and Hilliard further explained that the Marshall II's Living Trust was a Louisiana trust being administered by the Louisiana courts, but that there were interests of Marshall II's estate "involving claims peculiar to Texas" in need of administration in Texas.

On September 20, 1995, Pierce filed a document in the Texas probate proceedings explaining that Hilliard and each successor co-executor named in Marshall II's will declined to serve as executor. Accordingly, Pierce requested that he be appointed as sole Independent Executor. That filing also identified the sole devisee named in Marshall II's will as the Trustee of the Howard Marshall II Living trust. Pierce and Hilliard are the co-executors of that Living Trust.

On March 7, 1996, Pierce filed another amended application for probate representing that, because Marshall II transferred all of his assets to the Living Trust prior to his death, there are no assets subject to administration in Texas. Alternatively, Pierce requested that he be appointed sole Independent Executor. Robert McIntyre was then appointed by the Texas probate court as temporary administrator of the estate.

B.    **Marshall III's Will Contest and Tort Claims**

In the Texas probate proceedings, Marshall III filed a will contest and claims against (1) Pierce (individually and in his capacities as trustee of several trust and

attorney in fact for Marshall II under a power of attorney), (2) Hilliard (individually and in his capacity as trustee of several trusts), (3) Kenn Farrar, (individually and in his capacity as trustee of two trusts), (4) Marshall Petroleum, Inc., (5) Harvey Sorensen (individually and as trustee of a trust), (6) Foulston & Siefkin, L.L.P., (7) Elaine T. Marshall (individually and in her capacity as trustee of two trusts), (8) E. Pierce Marshall, Jr., and (9) Preston Marshall.

Marshall III alleged that he and his father, Marshall II, entered a contract in 1980 under which Marshall III agreed to sell to Marshall II his Koch Industries stock. Marshall III asserted that, in return, Marshall II promised to treat Marshall III equally to Pierce and his family with regard to estate planning and property. Marshall III sued for breach of this contract, as well as fraud, breach of fiduciary duty, promissory estoppel, and tortious interference, seeking damages, a declaration, and a constructive trust. These claims are based on the allegation that Marshall II established a Living Trust and transferred most of his estate to Pierce through that trust, to the exclusion of Marshall III. In addition, Marshall III claimed that Marshall II made *inter vivos* transfers of property to Pierce and his family for less than full and adequate consideration, and that he failed to make equal gifts to Marshall III. Marshall III complained that, beginning in 1994, Pierce and others caused Marshall II to sign several overreaching documents that operated

5

to put Pierce in control of Marshall II's vast wealth, including a power of attorney in favor of Pierce, and an amendment to the Living Trust, rendering it irrevocable.

With regards to Marshall II's will and codicil, Marshall III asserted that they were invalid based upon defects in their execution. Alternatively, Marshall III alleged that they were both executed as the result of undue influence. In the further alternative, Marshall III asserted that Marshall II lacked testamentary capacity when the will and codicil were executed. Marshall III similarly complained that the Living Trust and its amendments were executed as a result of undue influence and duress, such that transfers to the purported trusts should be invalidated.

Marshall III requested that the Texas probate court deny the application for probate and impose a constructive trust on all Marshall II's property that had been transferred to others.

## C.    Vickie's Bankruptcy Case in California

On January 25, 1996, Vickie filed for Chapter 11 Bankruptcy in California, where she lived. Pierce filed a proof of claim in the Bankruptcy proceedings, alleging that Vickie had defamed him when her lawyers told the press that Pierce had engaged in forgery, fraud, and overreaching to gain control of Marshall II's assets. Pierce sought a declaration that his claim was not dischargeable in bankruptcy. Vickie asserted truth as a defense. Later, Pierce filed a proof of claim

6

for the defamation, seeing to recover defamation damages in the bankruptcy proceedings.

Vickie also asserted counterclaims against Pierce in the bankruptcy action, among them a claim that Pierce tortiously interfered with an intended gift from Marshall II. According to Vickie, Marshall II intended to gift to her half of his income during their marriage in the form of a "catchall" trust that would be formed for the purpose of capturing their "new community" estate. The basis of both her defense to Pierce's defamation claim and her affirmative tortious interference claim was the allegation that Pierce prevented Marshall II's intended gift to her by, among other things, effectively imprisoning Marshall II by surrounding him with hired guards to prevent contact with Vickie, making misrepresentations to Marshall II, and transferring Marshall II's property against his express wishes.

Vickie's counterclaims turned her objection to Pierce's claim into an adversary proceeding. *See* FED. R. BANKR. P. 3007. On November 5, 1999, the Bankruptcy Court granted summary judgment in Vickie's favor on Pierce's defamation claim and, after a bench trial, entered judgment for Vickie on her tortious interference counterclaim (based upon both evidence presented at trial and facts found against Pierce as sanctions for discovery abuse). That Bankruptcy Court judgment, signed December 29, 2000, awarded Vickie approximately $450 million in compensatory damages and $25 million in punitive damages.

7

**D.     Vickie's Will Contest in Texas Probate Court**

While the Bankruptcy proceedings were pending in California, Vickie filed her own will contest in the pending Texas probate proceedings against Pierce and numerous other defendants.  Her pleading acknowledged the claims pending in the California proceedings, and specified that the relief she sought in Texas was requested only "as to such remedies and as against such parties who are not subject to the jurisdiction of the Bankruptcy Court."

Vickie challenged the validity of Marshall II's Living Trust, and argued that trust could not receive assets under the residuary clause in Marshall II's 1992 will.  Accordingly, Vickie asserted, interests subject to the residuary clause must pass by intestate succession.  She also sought an accounting of trust income and community property, and sought damages for alleged fraudulent transfers and fraud on the community estate.  She later added claims for breach of fiduciary duties, aiding and abetting, civil conspiracy, promissory estoppel, equitable estoppel, tortious interference, conversion, unjust enrichment, and breach of contract.

On January 3, 2000, Pierce and his wife Elaine Marshall (in their individual capacities and in their capacities as trustees of various trusts) filed, in the Texas probate proceeding, counterclaims against Vickie.  That filing alleged:

> 3.     The petition filed by Vickie Lynn Marshall is frivolous and violated § 10.001, *et seq.* of the Texas Civil Practice & Remedies

8

Code and Rule 13, Texas Rules of Civil Procedure. The allegations made by Vickie Lynn Marshall were known by Vickie Lynn Marshall to be false when she first made them. Discovery has further proven that Vickie Lynn Marshall['s] claims are frivolous. Accordingly, the Marshall Family Defendants are entitled to recover damages for Vickie Lynn Marshall's frivolous claims including attorney's fees and expenses incurred because of this litigation.

At least one line from the fourth paragraph appears to be missing as the text

on the next page begins in the middle of a sentence:

decedent Howard, Sr., and the benefits and rights of the Marshall Family Defendants as set forth in the will and trust established by Howard, Sr. Vickie Lynn Marshall has tortiously interfered with the inheritance rights of the Marshall Family Defendants by filing this lawsuit which contains false and fraudulent allegations. Vickie Lynn Marshall has intentionally invaded the personal and property rights of the Marshall Family Defendants and has acted without any just cause or excuse. Further the actions of Vickie Lynn Marshall as set forth above amount to intentional interference with administration of the estate of Howard, Sr.

5. As a result of the tortious actions of Vickie Lynn Marshall, the estate of Howard, Sr. and its intended beneficiaries, including the Marshall Family Defendants, have suffered damages including loss of benefit of the estate or trust, fees and expenses charged or collected by the Temporary Administrator, attorney's fees, expenses, and harm to the corpus of the estate. These damages continue and exceed the minimum jurisdictional limits of this court. Vickie Lynn Marshall is liable to the Marshall Family Defendants for all actual damages caused by her tortious interference with inheritance rights of the Marshall Family Defendants and her intentionally interference with the administration of the estate of Howard, Sr. Vickie Lynn Marshall is further liable for punitive damages because she has acted intentionally with malice.

6. As a result of Vickie Lynn Marshall's purported, but frivolous, will contest, E. Pierce Marshall has been forced to defend or prosecute this proceeding in good faith and with just cause. Pursuant to Texas Probate Code and any other applicable law or statute, E. Pierce Marshall, as executor of the applicable wills, is entitled to his

9

necessary expenses and disbursements, including reasonable attorney's fees, for defending or prosecuting this action in good faith and with just cause.

Trial of all the probate court claims began on September 18, 2000. Three months into trial (and less than a week after judgment was entered in Vickie's favor by the California Bankruptcy Court), on January 5, 2001, Vickie filed a Notice of Entry of Final Judgment by the Federal Bankruptcy Court and Notice of Voluntary Non-Suit without Prejudice of All Claims in the Texas probate proceedings.

On February 9, 2001, Pierce and Elaine Marshall amended their counterclaims against Vickie in the probate court, alleging she individually, and in conspiracy with others, "through a pattern of misrepresentations, defamation, creation of false documents, perjured testimony, filing of false pleadings and fraudulent acts, Vickie Lynn Marshall has tortiously interfered with Counter-Plaintiffs' rights and expectancy in the estate of J. Howard Marshall from a date well before his death until the present." This amended petition also contained a request for a declaratory judgment:

> Counter-Plaintiffs seek a declaration of the respective rights of Counter-Plaintiffs and Counter-Defendant with respect to the estate of J. Howard Marshall and a declaration that Vickie Lynn Marshall has no right to estate property of J. Howard Marshall II.
>
> Counter-Plaintiffs further seek a declaration that Vickie Lynn Marshall had no agreement or contract for half of J. Howard Marshall II's estate. Vickie Lynn Marshall's action in dismissing or non-suiting her claims without prejudice creates the prospect that she may

10

attempt to refile her baseless and frivolous claims at a later date even though barred by *res judicata* forcing all these Counter-Plaintiffs to waste additional time and resources defending them. Thus, the Court in justice and equity should permit the jury to consider the issue (TEX. CIV. PRAC. & REM. CODE § 37.007) and issue a declaratory judgment with respect to whether Counter-Defendant has any rights to property of the Estate of J. Howard Marshall II to prevent frivolous and harassing litigation against them, and Counter-Defendant will not be surprised or prejudiced by submission of this issue as Counter-Defendant intended until recently to submit the same issue."

On February 12, 2001, Vickie filed an objection to these claims, asserting that the amended counterclaims (1) were untimely and prejudicial, (2) violated the permanent injunction arising out the California Bankruptcy Court 1999 discharge, (3) failed to satisfy the requisites of the Declaratory Judgment Act, (4) constituted an improper request for a declaration of non-liability in a tort action, (5) sought to impermissibly undermine the prior California Bankruptcy Court Judgment, and (6) were improperly brought after Vickie's nonsuit, which the Probate Court was obligated to enter as a ministerial act.

On February 16, 2001, in compliance with a California Bankruptcy Court order declaring that defendants' Texas probate court tortious interference claims violated the bankruptcy court's discharge order and threatening contempt if those claims were not dismissed, those defendants dismissed the intentional interference claims against Vickie, leaving only the request for sanctions and request for declaratory relief.

11

**E.      The Texas Probate Court's Judgment**

Eighty questions were summited to the jury in the underlying probate case, which found in favor of the defendants on all issues.  Most of the questions were specific to Marshall III's will contest and claims (and the defendants' affirmative defenses to those claims), but one question was specific to Vickie:

## QUESTION NO. 66

Do you find that **Vickie Lynn Marshall** did not have an agreement with **J. Howard Marshall, II**, that he would give her one-half of all of his property?

Answer "We do so find" or "We do not so find".

Answer:              We do so Find

This jury finding was memorialized in the Probate Court's December 7, 2001 Second Amended Final Judgment, which stated that "IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED by the Court that counterdefendant VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH, did not have an agreement with J. HOWARD MARSHALL II that he would give her one-half of all his property."  That judgment also contained several other recitations related to Vickie, many of which are the subject of her appeal here, including: "IT IS FURTHER ORDERED, ADJUDGED, AND DECREED by the Court" that,

- This Court has exclusive and dominant jurisdiction over (1) all claims regarding the property owned by J. Howard Marshall II; . . . . (6) all affirmative claims and all filed and possible compulsory counterclaims raised by . . . VICKIE LYNN MARSHALL; and (7)

12

all plaintiffs' and defendants' claim raised and that could have been raised against the Estate of J. Howard Marshall II, concerning the making of any *inter vivos* or testamentary gift or transfer by J. Howard Marshall II of any of his property.

- VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH, abandoned any claim as to any property interest, other interest, or claim of any kind or sort in the estate of J. HOWARD MARSHALL II, in the property or assets of the J. Howard Marshall, II, Living Trust, or in any property that is the subject matter of this proceeding . . . .

- any and all claims by VICKIE LYNN MARSHALL against the Estate of J. HOWARD MARSHALL II or against the property in the J. Howard Marshall, II, Living Trust, including but not limited to claims that J. HOWARD MARSHALL II intended but failed to give her or to leave her any portion of such property during his life or upon his death, were required by law to have been asserted as compulsory counterclaims in this proceeding pursuant to Tex. R. Civ. P. 97. The Court further finds that the jury answered the foregoing questions that J. HOWARD MARSHALL II possessed mental capacity as required by law when he executed the Amended and Restated Living Trust indenture dated the 13th day of July 1994 and that the jury has failed to find that said execution was procured through undue influence exercised by E. PIERCE MARSHALL. The Court further finds that the jury answered the foregoing questions that J. HOWARD MARSHALL II possessed testamentary capacity as required by law when he executed the Last Will and Testament of J. Howard Marshall, II, dated the 22nd day of December 1992, and that the jury has failed to find that said execution was procured through undue influence exercised by E. PIERCE MARSHALL. The Court further finds that all defendants are also entitled to a take-nothing judgment based on any claim that VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH, should have made in this proceeding as a compulsory counterclaim.

- as a matter of law VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH, does not possess any interest in and is not entitled to possession of any property within the Estate of J. HOWARD MARSHALL II or any property of the J. Howard

13

Marshall, II, Living Trust because of any representations, promises, or agreements made by J. HOWARD MARSHALL II to or with VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH;

- as a matter of law any and all claims that have been or should have been asserted by VICKIE LYNN MARSHALL A/K/A ANNA NICOLE SMITH, based upon alleged representations, promises, or agreements made by J. HOWARD MARSHALL II to or with VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH, have been disposed of in this proceeding;

- J. HOWARD MARSHALL II did not intend to give and did not give to VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH, a gift or bequest from the Estate of J. HOWARD MARSHALL II or from the J. Howard Marshall, II, Living Trust either prior to or upon his death; and

- VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH, shall take nothing from any claim that she should have made in this proceeding as a compulsory counterclaim against . . . E. Pierce Marshall.

- pursuant to the Uniform Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code Ann. §§ 37.009 (Vernon 1987), E. PIERCE MARSHALL is entitled to an award of his reasonable and necessary attorneys' fees as is equitable and just against VICKIE LYNN MARSHALL A/K/A ANNA NICOLE SMITH. The attorneys' fees awarded herein against VICKIE LYNN MARSHALL A/K/A ANNA NICOLE SMITH are solely and exclusively based upon evidence relating to the attorneys' fees incurred during the trial which occurred in this cause between September 18, 2000 and February 18, 2001.

- PIERCE MARSHALL have and recover from VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH, attorneys' fees in the sum of FIVE HUNDRED FORTY-ONE AND N0/100 DOLLARS ($541,000.00) for services rendered through the trial of this cause, . . . ONE HUNDRED THOUSAND AND N0/100 DOLLARS ($100,000.00) from VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH, as additional reasonable attorneys' fees [for an appeal to the court of appeals and] ONE

14

HUNDRED THOUSAND AND N0/100 DOLLARS ($100,000.00) [for an appeal to the supreme court].

The probate court's plenary power expired over its December 7, 2001 final judgment on February 11, 2002.

## E.    Back in the Federal Courts . . . .

Pierce appealed the bankruptcy court's December 29, 2000 judgment to the California District Court.

### 1.    The District Court's June 19, 2001 opinion – Jurisdiction and Core vs. Non-Core Analysis

In Pierce's appeal, the federal district court first issued an opinion addressing only jurisdiction and standard of review. *In re Marshall*, 264 B.R. 609, 618 (C.D. Cal. June 19, 2001). The court concluded that the bankruptcy court did have jurisdiction over Vickie's tortious interference with an *inter vivos* gift counterclaim against Pierce, thereby rejecting Pierce's argument that the "probate exception" (which bars federal courts from probating a will) precluded the federal courts from exercising jurisdiction over Vickie's claim. *Id.* at 619. The court reasoned that Vickie's counterclaim is asserted against Pierce "individually and makes no claim against the estate or even against the trusts existing" when Marshall II died. *Id.* at 622. The court recognized that "Vickie's counterclaim is at least in part premised on the theory that she is entitled to nothing either from the living trusts or from the estate itself" but, rather, that "Pierce prevented J. Howard,

15

Sr. from including her in the living trusts." *Id.* at 623; *see also id.* ("Thus, it is entirely possible that the trusts, as currently structured, are legally valid but also that Pierce owes Vickie damages for preventing J. Howard, Sr. from structuring the trusts in another way.).

The district court rejected, however, the bankruptcy court's conclusion that Vickie's counterclaim was a "core Bankruptcy proceeding." *Id.* at 626. This was important because a bankruptcy court can only enter final judgment over core bankruptcy matters. *Id.* at 625. If a matter is non-core, the Bankruptcy Court may only entered proposed findings of fact and conclusion of law. *Id.* The district court then reviews those proposed findings and conclusion *de novo*, and it is the district court that ultimately enters the final judgment. *Id.* The district court thus vacated the bankruptcy court's December 20, 2000 purported final judgment and announced it would undertake a comprehensive review of the bankruptcy court's record, as well as take additional evidence, to decide whether Marshall II promised a gift to Vickie, whether Pierce interfered with that gift, and whether Pierce destroyed or failed to provide relevant evidence in a way that justified the imposition of sanctions.

### 2. The District Court's December 21, 2001 Opinion – Claim Preclusion

The California District Court ordered Pierce to produce additional documents and set a hearing date to hear additional evidence. *In re Marshall*, 271

16

B.R. 858, 862 (C.D. Cal. 2001). Before that hearing, Pierce filed a motion for summary judgment, asserting that (1) "Vickie's claims are precluded by the doctrine of claims preclusion by the [December 7, 2001] judgment in the Texas Probate Court," and, alternatively, (2) "Vickie is estopped from arguing the key elements of her claim for tortious interference with an *inter vivos* gift under the doctrine of issue preclusion because of the Texas probate judgment." *Id*. at 862. The district court concluded that res judicata did not apply, as Vickie did not, and was not required to, litigate her claim for interference with an *inter vivos* gift in Texas. *Id*. at 863 (citing exception to compulsory counterclaim rule that a party is not required to bring a counterclaim if that claim is the subject of a pending action elsewhere). As for collateral estoppel, the court held that the Texas Probate Court judgment was not yet final under Texas law because the court's plenary power had not expired. *Id*. Finally, the court held that Pierce's arguments were untimely, as the court's de novo review was not a new trial, but an examination of the trial in bankruptcy court. *Id*. at 865 ("The Court is not aware of any authority, nor does Pierce's counsel point to any, that would support the proposition of applying *res judicata* or collateral estoppel *after* a trial has been had."). The court also noted that the issues in the Texas Probate proceedings were not the same as the ones put at issue before the California Courts. *Id*.

**3.    The District Court's March 7, 2002 Opinion and Judgment Adopting as Modified Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law**

From December 11, 2001 to January 8, 2002, the California District Court "conducted an evidentiary hearing wherein it accepted the testimony of the central figures in the case, documentary evidence, and arguments of counsel" resulting in it adopting the bankruptcy court's findings of fact and conclusions of law with certain modification and making independent findings of fact and conclusions of law. *In re Marshall*, 275 B.R. 5, 7–8 (C.D. Cal. 2002). The district court did not rule on the propriety of the bankruptcy court's sanctions, as it concluded—after considering all the evidence, including Pierce's evidence and testimony that had previously been excluded by the bankruptcy court's sanctions—that Vickie was entitled to judgment on her claims. *Id*. at 57. Although the district court noted that "the facts are much more egregious than even the bankruptcy court suspected and found," it concluded that the evidence supported an award of actual damages that is less than the bankruptcy court awarded. *Id*. It signed a judgment awarding $44,292,767.33 in actual damages and $44,292,767.33 in exemplary damages. *Id*.

**4.    The Ninth Circuit's December 30, 2004 Opinion – Probate Exception**

Pierce appealed the District Court's judgment. The Ninth Circuit reversed, concluding that the probate exception to federal jurisdiction deprived the bankruptcy court of jurisdiction to hear Vickie's counterclaim against Pierce. *In re*

18

*Marshall*, 392 F.3d 1118, 1137 (9th Cir. 2004). The court agreed with Pierce that Vickie's counterclaim in the bankruptcy proceeding was "simply a disguised attack on J. Howard Marshall II's 1982 trust, as amended, and on the postmortem disposition of his property as provided in the trust." *Id*. Having concluded that the Texas probate court had "exclusive jurisdiction," the court directed the lower courts to dismiss Vickie's claims against Pierce, and consider the effect of the probate exception on other procedural matters and sanctions awarded. *Id*.

5.     **The U.S. Supreme Court's May 1, 2006 Opinion – Probate Exception**

Vickie appealed the Ninth Circuit's judgment. The Supreme Court reversed, holding that the probate exception did not apply. *Marshall v. Marshall*, 547 U.S. 293, 312, 126 S. Ct. 1735, 1749 (2006). It noted that Vickie's tortious interference claim did not "involve the administration of an estate, the probate of a will, or any other purely probate matter"; rather she "seeks an *in personam* judgment against Pierce" not the *res* in the custody of the probate court. *Id*. The Supreme Court also rejected the Ninth Circuit's determination that the federal court lacked jurisdiction because the Texas Probate Court had declared it had exclusive jurisdiction over all of Vickie's claims against Pierce. *Id*. at 312–13; 126 S. Ct. at 1749–50. It reasoned that, while Texas law governs the substantive elements of Vickie's counterclaim, "Texas may not reserve to its probate courts the exclusive right to adjudicate a transitory tort." *Id*. The Supreme Court reversed and remanded to the

19

Ninth Circuit, noting that the issues not previously reached by the Ninth Circuit—including "the question whether Vickie's claim was core" and "Pierce's arguments concerning claim and issue preclusion"—remained "open for consideration on remand." *Id*. at 314–15; 126 S. Ct. at 1750.

### 6. The Ninth Circuit's March 19, 2010 Opinion – Core vs. Non-Core and Issue Preclusion

On remand, the Ninth Circuit held that Vickie's tortious interference claim was a compulsory counterclaim to Pierce's defamation claim in the bankruptcy proceeding, but nonetheless concluded that it was "not a core proceeding arising in a case under the Bankruptcy Code because it is not so closely related to Pierce Marshall's defamation claim that it must be resolved in order to determine the allowance or disallowance of his claim against her bankruptcy estate." *In re Marshall*, 600 F.3d 1037, 1059 (9th Cir. 2010). Because the bankruptcy court could not render final judgment over non-core claims, the final judgment resolving Vickie's claim in federal court was the district court's March 7, 2002 judgment, not the bankruptcy court's December 29, 2000 purported final judgment. *Id*. at 1060. Reasoning that because "the Texas probate court's judgment was the earliest final judgment entered on matters relevant to this proceeding," the court held that the district court erred by refusing "to give preclusive effect to any of the jury findings incorporated into the Texas probate court's judgment or to any of the

20

Texas probate court's other factual findings of legal conclusions." *Id*. at 1064. The Ninth Circuit thus again reversed and remanded the District Court's judgment.

### 7. The U.S. Supreme Court's June 23, 2011 Opinion – Core vs. Non-Core and Article III Power

Vickie again appealed to the Supreme Court. That Court held that—contrary to the District Court's and Ninth Circuit's holdings—"Vickie's counterclaim against Pierce for tortious interference is a 'core proceeding' under the plain text of § 157(b)(2)(C)." *Stern v. Marshall*, ___ U.S. ___, 131 S. Ct. 2594, 2604 (2011). The Supreme Court nonetheless held that by resolving Vickie's core state law tortious interference claim in a final judgment as statutorily permitted, the bankruptcy court exceeded its powers under Article III of the United States Constitution. *Id*. at 2608. Because it concluded that the Bankruptcy Court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim," the Court affirmed the Ninth Circuit's judgment reversing the District Court's judgment in Vickie's favor. *Id*. at 2620. It did not address issue preclusion.

### 8. Motion for Sanctions on Remand

On May 29, 2013, the district court addressed motions for sanctions filed by Stern alleging misconduct in the underlying bankruptcy proceedings. *See in re Marshall*, No. SACV 01-97, 2013 WL 2370711, at *1 (C.D. Cal. May 29, 2013). Several parties, including Pierce's estate and related companies and successors in

interest, filed motions requesting a stay of the court's entry of final judgment pending disposition of the sanctions motion and pending disposition of this appeal of the probate case. *Id.* The court granted a stay pending resolution of the sanctions, issued *sua sponte* show cause order against an attorney to demonstrate why he should not be sanctioned for bad faith conduct and, finally, denied the requested stay pending this appeal. *Id.*

On August 18, 2014, the district court revisited the issue, concluding that "it would be unlawful and repugnant" for the court to "issue an order designed to undermine or rewrite the Circuit's precedent or the Texas judgment." *In re Marshall*, 8:01-cv-00097-DOC (C.D. Cal. Aug. 18, 2014). Accordingly, the district court dismissed Stern's motion for sanctions. *Id.*

### THIS APPEAL

Numerous parties filed notices of appeal of the probate court's December 7, 2001 final judgment. On August 15, 2002, we abated this appeal pursuant to a notice stating that Marshall III had filed for bankruptcy protection. *See* TEX. R. APP. P. 8.1, 8.2. On March 13, 2014, we reinstated the appeal on Howard III's motion indicating his bankruptcy case had concluded.

Shortly thereafter, all of the appellants except Vickie filed notices to dismiss their respective appeals, which we granted. Howard Stern, as Executor of the Estate of Vickie Lynn Marshall, filed a Suggestion of Death of Vickie Lynn

22

Marshall and requested that we name him in place of Vickie and allow the appeal to proceed in the name of the estate. We granted his motion. Stern then notified the court that "the grounds for [Vickie's Estate's] appeal are not dependent upon a reporter's record and for that reason a reporter's record has not been requested." We in turn notified the parties that, pursuant to Texas Rule of Appellate Procedure 37.3(c), we would "consider and decide only those issues or points that do not require a reporter's record for a decision."[1]

We use the name "Vickie" to refer to appellant during her lifetime, and the name "Stern" when referencing Vickie's estate. Appellees are referred to throughout this opinion as either "appellees" or "Marshall defendants."[2]

Stern's brief raises the following issues:

1.  Vickie had tortious interference claims against Pierce pending in both the Probate Court and in a California court. After Vickie won her case in California, she nonsuited all of her claims in the Probate Court. Rather than dismissing Vickie, the Probate Court allowed the [Marshall defendants] to file new, post-nonsuit counterclaims against Vickie seeking, among other things, improper and unsupportable declaratory relief. Did the Probate Court err in allowing, rendering judgment on, and awarding damages and fees on those declaratory judgment counterclaims?

2.  Vickie's tortious interference claims required no findings that she was entitled to take under J. Howard's will or that she was entitled to

---

[1]  After Stern's appellant's brief was filed, appellees filed a Motion for Leave to File Partial Reporter's Record, stating that a "partial reporter's record would assist the Court in understanding the factual and procedural background of this dispute and in assessing the merits of the issues on appeal." We denied that motion.

[2]  We note that appellee Pierce is also now also deceased.

23

property that passed through J. Howard's estate or trusts. Only Vickie and Pierce, not J. Howard's estate or the appellee trusts, were parties in the California case. Did the Probate Court err in finding that Vickie's claims were compulsory counterclaims and that she abandoned her claims by taking a nonsuit after she won her California case?

3.     The only claim that Vickie asserted in California was about a gift—that Pierce tortiously interfered with J. Howard's *inter vivos* gift to her. The only question that the jury was asked regarding Vickie was about a contract—whether she and J. Howard had an agreement that J. Howard would give her half of his estate. The Probate Court's final judgment recited findings outside and beyond the jury verdict, including that there had been no intent for J. Howard to give Vickie an *inter vivos* gift and that all of Vickie's claims against Pierce were disposed of. Did the Probate Court err in rendering a final judgment against Vickie that was unsupported by the pleadings, jury's verdict, and law?

### THE EFFECT OF VICKIE'S NONSUIT

Stern argues that Texas Rule of Civil Procedure 162 "gives Vickie an absolute right to take her nonsuit which completely terminated her case from the moment it was filed." *See Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011). He contends that "no cognizable claim for affirmative relief was *pending* at the time Vickie filed her nonsuit, and the Probate Court's failure to enter an order granting Vickie's nonsuit without prejudice and dismissing her from the case was error." He acknowledges that Appellees' pleadings against Vickie at the time of the nonsuit were labeled "affirmative claims" and that they contained the words "tortious interference," but he contends that reference to the actual facts pleaded and relief sought demonstrate that their "affirmative" claims were only for

24

sanctions. Because Rule 162 provides that "a dismissal . . . shall have no effect on any motion for sanctions," Stern argues that the Appellees' pending request for sanctions did not prevent Vickie's nonsuit from being effective, as she did not need to remain a party for the court to rule on the sanctions request.

Finally, Stern asserts that the probate court compounded its error by allowing the Appellees to add counterclaims, including declaratory judgment action claims, against Vickie weeks after her nonsuit. *See Progressive Ins. Cos. v. Hartman*, 788 S.W.2d 424, 426 (Tex. App.—Dallas 1990, orig. proceeding) ("A counterclaim filed after the motion to nonsuit is ineffective."). Accordingly, Stern requests that we hold the court lacked jurisdiction to enter judgment against Vickie on the improper counterclaims.

Appellees respond that the probate court correctly determined that their claims for sanctions and for tortious interference with inheritance rights—both of which were pending at the time of Vickie's nonsuit—were counterclaims for affirmative relief that prevented Vickie's dismissal from the case. Regardless of whether they later prevailed on these claims, Appellees contend that their request for sanctions and request for tortious interference damages in the form of "loss of benefit of the estate or trust, fees and expenses charged or collected by the Temporary Administrator, attorneys' fees, expenses, and harm to the corpus of the estate" survived Vickie's nonsuit. Because these were live counterclaims pending

at the time of the nonsuit, the trial court was within its power and discretion to allow Appellees to later amend those counterclaims to add declaratory judgment action claims. Appellees further argue that allowing such amendment was required, as Vickie was considered "a necessary and indispensable party to the probate of her husband's estate" under Texas Rule of Civil Procedure 39. *Cf. Minga v. Peralez*, 603 S.W.2d 240, 241 (Tex. Civ. App.—Corpus Christi 1980, no writ) (heirs in law to decedent who died intestate are indispensable parties when suit against estate involves title to real estate).

Appellees also point out that when Vickie nonsuited, Marshall III's live pleadings requested judicial declarations that Marshall II's will was invalid, that the Living Trust was void, and that all of Marshall II's property should pass through intestacy to Pierce, Marshall III, and Vickie. Because Vickie would be affected by the resolution of this claim, she was an indispensable party such that the probate court had no authority to dismiss her.

## A. Applicable Law

Rule 162 provides, in relevant part:

At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit . . . .

Any dismissal pursuant to this rule shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief or excuse the payment of all costs taxed by the clerk. A dismissal under this rule shall have no effect on any motion for sanctions, attorney's

26

fees or other costs, pending at the time of dismissal, as determined by the court.

TEX. R. CIV. P. 162.

A motion for "sanction[s] for filing a frivolous lawsuit . . . survive[s] nonsuit, else its imposition would rest completely in the plaintiff's hands, defeating its purpose." *CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n, Inc.*, 390 S.W.3d 299, 300 (Tex. 2013). The supreme court has noted, however that "[a]lthough the Rule permits motions for costs, attorney's fees, and sanctions to remain viable in the trial court, it does not forestall the nonsuit's effect of rendering the merits of the case moot." *Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon*, 195 S.W.3d 98, 101 (Tex. 2006) (per curiam); *see also id*. at 100–01 (holding Rule 162's provision providing that a nonsuit shall "have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal" allows the court to rule on a defendant's request for an award of costs post-dismissal, but that request is considered "collateral to the merits of the underlying case" rather than a request for affirmative relief). "A claim for affirmative relief must allege a cause of action, independent of the plaintiff's claim, on which the claimant could recover compensation or relief, even if the plaintiff abandons or is unable to establish his cause of action." *Id*. at 101 (citing *BHP Petroleum Co., Inc. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990)). "The use of a creative pleading that merely restates defenses in the form of a declaratory

27

judgment action cannot deprive the plaintiff of this right" to nonsuit under Rule 162. *Millard*, 800 S.W.2d at 841. Similarly, a request for declaratory relief that amounts to only denial of plaintiff's cause of action is not a counterclaim that seeks affirmative relief that survives a nonsuit. *Id.*; *see also Gen. Land Office v. Oxy U.S.A.*, 789 S.W.2d 569, 570 (Tex. 1990) ("If a defendant does nothing more than resist plaintiff's right to recover, the plaintiff has an absolute right to the nonsuit.").

## B. Analysis

Mootness implicates subject-matter jurisdiction. *Meeker v. Tarrant Cnty. Coll. Dist.*, 317 S.W.3d 754, 758 (Tex. App.—Fort Worth 2010, pet. denied). We review subject-matter jurisdiction de novo. *Id.*

Appellees' live pleadings at the time of Vickie's nonsuit included a January 3, 2000 filing entitled "Affirmative Claims of Marshall Family Defendants against Vickie Lynn Marshall." That pleading states that Vickie's petition is frivolous and violates Texas Civil Practice and Remedies Code § 10 and Rule 13 of the Texas Rules of Civil Procedure. It also alleges that,

> Vickie Lynn Marshall has ***tortiously interfered with the inheritance rights of the Marshall Family Defendants*** by filing this lawsuit which contains false and fraudulent allegations. Vickie Lynn Marshall has intentionally invaded the personal and property rights of the Marshall Family Defendants and has acted without any just cause or excuse. Further, the actions of Vickie Lynn Marshall as set forth above amount to ***intentional interference with administration of the estate of Howard, Sr.***

28

(emphasis added)  The petition alleges harm in the form of "loss of benefit of the estate or trust, fees and expenses charged or collected by the Temporary Administrator, attorney's fees, expenses, and harm to the corpus of the estate."  It also seeks recovery from Vickie for the administration costs of defending the will, trust, and codicil.  The prayer requests the court award "actual damages, punitive damages, attorney's fees and court costs," "damages caused by Vickie Lynn Marshall's frivolous pleadings including attorney's fees and expenses incurred by the Marshall Family Defendants in defending this action," and "necessary disbursement and expenses, including reasonable attorney's fees."

One week after her nonsuit, Vickie filed "Exceptions and Objections to, and Motion to Dismiss and/or Sever, the Purported 'Counterclaims'."  She complained, among other things, that the counterclaims should not survive her nonsuit.  Her filing was discussed by the parties and trial court at a bench conference held to address the scope of permissible questioning of Vickie in light of her nonsuit.  Vickie's counsel argued that because the specific conduct cited in the Marshall defendant's pleading in support of their tortious interference claims was the same conduct for which they sought sanctions, those tort claims were not affirmative claims under Rule 162.   In response, counsel for the Marshall defendants argued that their pleadings were sufficient under notice pleading rules to inform Vickie of their counterclaims for tortious interference, and that identifying her filing of a

29

frivolous lawsuit as an example of tortious interference did not limit the bases of their tort claims. The court agreed with the Marshall defendants, stating that—while the claims were "very vague[ly]" pleaded—he did not interpret the Marshall Family's counterclaims to be limited to a request for sanctions, but instead to also plead a claim for tortious interference with inheritance and tortious interference with administration of an estate. The court further stated it would reconsider Vickie's special exception and order the Marshall Family Defendants to re-plead their claims if she requested.

A Rule 162 "'claim for affirmative relief' must be a pleading that states facts showing a cause of action independent of the plaintiff's claim." *Baca v. Hoover, Bax, & Shearer*, 823 S.W.2d 734, 737 (Tex. App.—Houston [14th Dist.] 1992, writ denied). And, as Stern correctly points out, "[w]hether a pleading is an affirmative claim for relief is determined by the facts alleged and not by the name given the plea or by the form of the prayer for relief." *Id.* From this, Stern reasons that—even if the Marshall defendants pleaded a recognized cause of action that provides potential recovery independent from Vickie's claims—if *the facts the Marshall Family defendants pleaded* in support of a claim would not support recovery under that cause of action, the claim cannot be "a pending claim for affirmative relief" that survives nonsuit. Stern does not cite any cases, and we have located none, applying Rule 162 in this manner. Rather, three of the cases

30

Stern relies upon focus on whether the purported affirmative claim seeks relief independent of the nonsuiting party's claim, and the other case turns on the timing, rather than the substance, of the party's counterclaim. *Quanto Int'l Co. v. Lloyd*, 897 S.W.2d 482, 486 (Tex. App.—Houston [1st Dist.] 1995, orig. proceeding) (holding that defendant's motion to compel arbitration was affirmative claim for relief that survived plaintiff's nonsuit); *Baca*, 823 S.W.2d at 738 (holding defendant's motion for restitution was an affirmative claim for relief surviving opposing party's nonsuit); *Gen. Land Office*, 789 S.W.2d at 570 (holding defendant's claim "seeking an advisory opinion on the constitutionality of the statutes in question does not constitute affirmative relief under Rule 162"); *Greenberg v. Brookshire*, 640 S.W.2d 870, 872 (Tex. 1982) (holding that granting of a non-suit is merely a ministerial act and that defendant's counterclaim filed *after* plaintiff's nonsuit was filed could not prevent dismissal of case).

Our Court has recognized a cause of action for tortious interference with inheritance rights. *See King v. Acker*, 725 S.W.2d 750, 754 (Tex. App.—Houston [1st Dist.] 1987, no writ). *But see Jackson Walker, LLP v. Kinsel*, No. 07-13-00130-CV, 2015 WL 2085220, at *3 (Tex. App.—Amarillo April 10, 2015, no pet. h.) (mem. op.) (on reh'g). The elements are "(1) that an interference with one's property or property rights occurred; (2) such interference was intentional and caused damage; and (3) the interference was conducted with neither just cause nor

31

legal excuse." *In re Estate of Valdez*, 406 S.W.3d 228, 233 (Tex. App.—San Antonio 2013, pet. denied). Stern does not dispute that the Marshall defendants pleaded this claim; rather, he argues that the probate court "could not have reasonably believed" that her conduct cited by the Marshall defendants, i.e., filing a will contest, constituted tortious interference. In support, he notes that the filing of a will challenge is a lawful action that cannot constitute tortious interference. *See id*.; *see also* TEX. EST. & G'SHIP CODE ANN. § 54.0014(a) ("The filing or contesting in probate court of a pleading relating to a decedent's estate does not constitute tortious interference with inheritance of the estate."). And he argues that the probate court "further affirmed this view" by ultimately denying the Marshall Family defendants' motion for sanctions.

We agree with the probate court that, at the time of Vickie's nonsuit, the Marshall Family defendants had tortious-interference claims pending that qualified as affirmative claims for relief under Rule 162. The Marshall Family defendants pleaded that Vickie has "intentionally interfered with the inheritance rights of the Marshall Family Defendants by filing this lawsuit," and that she "intentionally invaded the personal and property rights of the Marshall Family Defendants . . . without any just cause or excuse," which amounted to "intentional interference with administration of the estate of Howard, Sr." While Stern offers several reasons that any tortious interference claim based upon the conduct cited in the

32

Marshall Family defendant's pleadings would ultimately fail, his arguments conflate the concepts of affirmative independent claims for relief and claims for relief that will ultimately lead to recovery. We believe that whether an affirmative claim is pleaded for purposes of Rule 162 turns on the former, not the latter.

Because the Marshall defendants had pending affirmative claims for relief in the form of tortious interference claims against Vickie, the probate court did not err in refusing to dismiss Vickie from the underlying suit when she nonsuited her claims.

## THE MARSHALL DEFENDANTS' DECLARATORY JUDGMENT ACT CLAIMS

On February 9, 2001, during trial but after Vickie's nonsuit of her claims, the Marshall defendants added claims for declaratory relief against Vickie to their pending claims for sanctions and tortious interference. A few days later, on February 12, 2001, the Marshall defendants dropped their tortious interference claims and moved forward on only their declaratory judgment action and request for sanctions because the California Bankruptcy Court ruled that the tortious interference claims violated a bankruptcy discharge order.

The Marshall defendants specifically sought a "declaration that Vickie Lynn Marshall has no right to estate property of J. Howard Marshall II" and that she "had no agreement or contract for half of J. Howard Marshall II's estate."

Stern argues that the trial court "committed reversible error when it permitted the Defendants to assert and pursue declaratory relief under the Uniform Declaratory Judgments Act."

## A. Justiciable Controversy

The stated purpose of the Declaratory Judgments Act is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b) (West 2014). The statute expressly provides that it is "remedial" and "is to be liberally construed." *Id*.

"[A] declaratory judgment action may lie only where there is a 'substantial controversy involving genuine conflict of tangible interests.'" *City of Dallas v. USC, LLC*, 347 S.W.3d 231, 240 (Tex. 2011); *see also Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) ("A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought."). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Bonham State Bank*, 907 S.W.2d at 467. Whether a justiciable controversy exists is a question of law that we review de novo. *Tex. Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153–54 (Tex. App.—Austin 1998, no pet.).

The Marshall defendants pleaded, in support of their Declaratory Judgment Act claims,

> Vickie Lynn Marshall's action in dismissing or non-suiting her claims without prejudice creates the prospect that she may attempt to refile her baseless and frivolous claims at a later date even though barred by *res judicata* forcing all these Counter-Defendants to waste additional time and resources defending them. Thus, the Court in justice and equity should permit the jury to consider the issue (Tex. Civ. Prac. & Rem. Code § 37.007) and issue a declaratory judgment with respect to whether [Vickie] has any rights to property of the estate of J. Howard Marshall II or any promise to receive half of J. Howard Marshall II's estate to prevent frivolous and harassing litigation against them, and [Vickie] will not be surprised or prejudiced by submission of this issue as [Vickie] intended until recently to submit the same issue.

Stern contends that the theoretical possibility that Vickie could refile her claims against the Marshall defendants does not make for a justiciable controversy; instead the Marshall defendants' declaratory judgment claims seek no more than an improper denial of liability on Vickie's dismissed claims and an advisory opinion that serves no useful purpose.

Specifically, Stern points out that, after Vickie filed her nonsuit, she never threatened to refile her claim. Indeed, she had already prevailed in California and won a substantial personal judgment against Pierce for his tortious interference with her *inter vivos* gift. In support, Stern cites numerous non–probate cases holding that the possibility that a plaintiff may file a future suit is insufficient to create a justiciable controversy. *See, e.g.*, *Howell v. Mauzy*, 899 S.W.2d 690, 706 (Tex. App.—Austin 1995, writ denied) (claimed "legitimate fear that [the plaintiff]

35

would bring future actions" is not sufficient to prove the existence of a dispute necessitating declaratory relief particularly where there was no ongoing relationship); *Pace Concerts, Ltd. v. Resendez*, 72 S.W.3d 700, 703 n.4 (Tex. App.—San Antonio 2002, pet. denied) ("fact that [plaintiff] may assert future claims arising out of the same set of circumstances is not alone sufficient to entitle [defendant] to declaratory judgment absent a continuing relationship"); *Sanchez v. AmeriCredit Fin. Servs., Inc.*, 308 S.W.3d 521, 525 (Tex. App.—Dallas 2010, no pet.) ("potential that another suit might be filed" reasserting nonsuited claims was "irrelevant and should not be considered by the trial judge"); *Stein v. First Nat'l Bank*, 950 S.W.2d 172, 175 (Tex. App. —Austin 1997, no pet.) (despite plaintiff's refusing to sign a release after he dismissed his suit, declaratory judgment was improper because "the mere possibility that [plaintiff] might refile and that the [defendant] would be in another lawsuit is not enough to ripen the controversy . . ."); *Graves v. Diehl*, No. 01-00-00412-CV, 2006 WL 1699527, at *9 (Tex. App.—Houston [1st Dist.] June 22, 2006, pet. denied) (mem. op.) (error to grant declaratory relief, after nonsuit, because the "mere possibility" that the offending conduct will resume "that may require the parties to again engage in litigation did not 'ripen' this controversy"); *Peacock v. Schroeder*, 846 S.W.2d 905, 912 (Tex. App.—San Antonio 1993, no writ) (possibility of having to refile suit did not ripen matter into an actual controversy that was proper for declaratory relief).

Appellees argue that these cases are distinguishable, and that the declarations they sought against Vickie in the probate court are specifically contemplated by the Texas Declaratory Judgment Act. They direct us to section 37.004, which provides that any person interested under a will "may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2014). Additionally, they cite section 37.005, which provides that anyone interested "in the administration of a trust or of the estate of a decedent . . . may have a declaration of rights or legal relations in respect to the trust or estate" to identify "devisees, legatees, heirs, next of kin, or others," or "to determine any question arising in the administration of the trust or estate, including questions of construction of wills and other writings." TEX. CIV. PRAC. & REM. CODE ANN. § 37.005(1), (3) (West 2014).

We agree with Stern that the Marshall family defendants' stated reason for requesting the trial court allow them "in justice and equity" to add declaratory-judgment claims mid-trial—i.e., the allegation that Vickie's "dismissing or non-suiting her claims without prejudice creates the prospect that she may attempt to refile her baseless and frivolous claims at a later date"—does not provide a basis for finding a justiciable controversy. But we are not constrained by this statement of the Marshall family's reason in deciding the legal question of whether the trial

court properly determined that the Marshall defendants' request for a declaratory relief presented a justiciable controversy.

Stern has repeated emphasized that Vickie's tort claims against *Pierce individually* (founded on the allegation that he interfered with Marshall II's intended *inter vivos* gifts to her) are separate and apart from her claims against *Howard II's estate*, and that "after her non-suit, Vickie had no claim against the estate, against estate assets, or challenging her husband's will or living trust." Be that as it may, we disagree with the proposition—implicit in Stern's argument—that Vickie's lack of claims pending in the estate case rendered declarations sought by the Marshall defendants improper and irrelevant to the probate issues still pending before the probate court in adjudicating respective rights to Marshall II's estate.

The trial court had pending before it a multitude of issues related to Marshall II's estate even after Vickie's nonsuited her claims. To properly determine if a justiciable controversy was presented by the Marshall defendants' request for declaratory judgment, we must view this claim as it relates to these matters that remained pending in the probate court, rather than—as Stern urges—as it relates to Vickie's nonsuited claims.

Appellees cite this Court's decision in *In re O'Quinn*, which held that a foundation designated as a will beneficiary could intervene in probate proceedings

38

over the objection of the alleged common-law wife of the decedent who argued that the foundation lacked a sufficient justiciable interest. 355 S.W.3d 857, 861 (Tex. App.—Houston 2011, orig. proceeding). The foundation sought declarations that (1) the decedent was not married at the time of his death; (2) all of the decedent's personal effects were devised under the will to the Foundation; and (3) the foundation is the sole residual beneficiary of the decedent's law firm testamentary trust. *Id*. We noted that the foundation had a vested interest in the property owned by the decedent, and that the purported wife made several claims that—if successful—would significantly reduce the amount of assets that are part of the probate estate. *Id*. Accordingly, we concluded that the dispute between the foundation and purported wife was not "merely theoretical, hypothetical or contingent." *Id*. at 865. We further held that the foundation, as the devisee under the will, may permissibly seek declaratory relief pursuant to Civil Practice and Remedies Code section 37.005(3) to determine "any question arising in the administration" of the estate, including questions of whether the decedent was married and whether the decedent made gifts and financial promises to his purported wife. *Id*. at 866.

Stern insists that appellees' "reliance on *O'Quinn* is misplaced," because the purported wife in that case actively pursued estate assets, meaning she was attempting to keep the foundation from getting what the estate planned to give to it.

This case is distinguishable, Stern argues, because Vickie nonsuited claims against estate and was instead pursuing only tort claims in a different forum, recovery from which would not impact the size of the probate estate.

After Vickie's nonsuit, Pierce's request that Marshall II's will and codicil be entered into probate and that testamentary letters be issued was still pending. Also pending was Marshall III's challenge to the validity of the will and codicil and numerous tort claims against various parties related to Marshall II's intentions during his life, as well as the circumstances surrounding the execution of numerous probate and will documents. Marshall III sought to invalidate numerous *inter vivos* and testamentary gifts, and to have Marshall II's assets pass through intestacy to the three heirs, rather than through Marshall II's will and codicil.

Vickie is Marshall II's widow and was one of his three surviving heirs. The Marshall defendants' requested declaration that "Vickie Lynn Marshall has no right to estate property of J. Howard Marshall II" and that she "had no agreement or contract for half of J. Howard Marshall II's estate" falls within the plain meaning of the Act's provisions allowing declaratory judgment claims to determine each interested party's rights and how to properly and comprehensively administer Marshall II's estate. Stern's protestations that Vickie had opted to only pursue tort claims to recover in a different forum does not vitiate the probate

court's broad ability to adjudicate claims and resolve questions related to the administration of an estate.

We hold that the trial court did not err in concluding that appellees' demonstrated a justiciable controversy to support their request for declaratory relief.

## B. Declaration of Non-Liability and Prior Pending Action

Stern next argues that "[g]ranting declaratory relief was erroneous in this case because it was impermissibly used to defeat Pierce's potential and actual tort liability in California." In support, he cites several cases for the proposition that it is error for trial courts to exercise jurisdiction over a declaratory judgment action seeking to determine tort liability. *See Abor v. Black*, 695 S.W.2d 564, 566–67 (Tex. 1985) (trial court should decline to exercise jurisdiction over a declaratory judgment suit that seeks to determine potential tort liability because exercising jurisdiction will deprive the "real plaintiff of the traditional right to choose the time and place of suit"); *Averitt v. PriceWaterhouseCoopers, L.L.P.*, 89 S.W.3d 330, 333-34 (Tex. App.—Fort Worth 2002, no pet.) (reversing declaratory judgment and dismissing claim because "PWC's use of the Act to determine potential tort liability was improper"); *Hous. Auth. v. Valdez*, 841 S.W.2d 860, 865 (Tex. App. —Corpus Christi 1992, writ denied) (error to bring declaratory judgment counterclaim to adjudicate tort liability); *Stein*, 950 S.W.2d at 174 ("In general, a

potential defendant may not use a declaratory judgment to determine potential tort liability"). This is particularly true when, as here, the defendant files a declaratory judgment counterclaim after the plaintiff takes a nonsuit. *Tex. Elec. Utils. Co. v. Rocha*, 762 S.W.2d 275 (Tex. App.—El Paso 1989, writ denied) (improper to bring declaratory action after nonsuit to attempt to litigate potential liability); *K.M.S. Research Labs. v. Willingham*, 695 S.W.2d 564, 566 (Tex. App.—Dallas 1982, no writ) ("litigation of liability by a potential defendant in a tort action is an improper use of declaratory judgment legislation").

Relatedly, Stern argues that the declaratory judgment counterclaims were also erroneous because the Act is not available to settle disputes, i.e., Vickie's tortious interference claims, already pending before a different forum in a different court.

Appellees respond that their "declaratory judgment counterclaims did not ask the court to determine their potential tort liability." Rather, they argue, they "asked for declarations concerning [Marshall II]'s estate plan and the parties' rights to his assets [pursuant to] TEX. CIV. PRAC. & REM. CODE ANN. §§37.004–37.005."

We agree with appellees. Stern does not complain that the Marshall defendants actually requested a declaration of non-liability for a tort from the Texas probate court. Instead, he complains that Pierce was able to use a

declaration in the Texas probate court to defeat a tort award in California. But our concern here is whether the probate court properly found the Marshall defendants' requested declarations to be within the gamut of the Texas Declaratory Judgment Act, not whether those declarations–once obtained—could be used elsewhere for a different purpose.

### C. Timeliness

Finally, Stern argues that the Marshall defendants' "declaratory judgment action, filed five weeks after Vickie nonsuited her claims and almost five months into the trial, were not timely filed since Vickie had an absolute right to her nonsuit." He argues that Vickie timely objected to the new counterclaims, and proved that the new pleadings substantively changed the nature of the case and trial, were prejudicial and a surprise."

A court must allow pleadings to be amended during trial "when the presentation of the merits will be subserved thereby and the objecting party fails to satisfy the court that the amendment would prejudice that party in maintaining the action or defense on the merits." *State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994) (citing TEX. R. CIV. P. 66). "A court may not refuse a trial amendment unless (1) the opposing party presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense, and thus

is prejudicial on its face." *Id*. (citing *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex.1990)).

The burden of showing surprise or prejudice rests on the party resisting the amendment. *Id*. If the trial amendment is not mandatory, then the decision to permit or deny the amendment rests within the sound discretion of the trial court. TEX. R. CIV. P. 66*; Greenhalgh*, 787 S.W.2d at 939. In such a case, the court's decision to allow or deny a trial amendment may be reversed only if it is a clear abuse of discretion. *Hardin v. Hardin*, 597 S.W.2d 347, 349–50 (Tex. 1980).

Because Stern is proceeding without a reporter's record, he cannot meet his burden of showing "surprise or prejudice" and we presume the record supports the trial court's exercise of its discretion. *See Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) (per curiam). We also conclude that the amendments were not prejudicial on their face. The Marshall defendants' declaratory judgment counterclaims concerned the very topics already at issue before the court and were issues that Vickie put at issue in the Texas probate court and the federal courts. In this situation, Stern cannot demonstrate that allowing the Marshall defendants to add their counterclaims was an abuse of discretion. *See Kilpatrick*, 874 S.W.2d at 658 (holding that trial amendment adding new cause of action was not prejudicial on its face because it involved the same subject matter and trial court could have

44

reasonably believed that the trial amendment did not impair defendant's ability to present defense).

## THE JUDGMENT

The remainder of Stern's complaints concern the trial court's judgment. Specifically, Stern complains that the judgment contains recitations adjudicating rights that are not supported by the pleadings, the verdict, or the law.

"The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity." TEX. R. CIV. P. 301.

### A.     Conforming to the Pleadings

Stern argues that aspects of the judgment do not conform to the pleadings. By electing to proceed with this appeal without a reporter's record, however, Stern has waived any complaint about the judgment not conforming to the pleadings. *See Gutierrez v. Gutierrez*, 86 S.W.3d 721, 729 (Tex. App.—El Paso 2002, no pet.) (recognizing that appellate court cannot determine if unpleaded issue has been tried by consent without reporter's record).

### B.     Abandonment v. Nonsuit

The final judgment recites throughout that Vickie shall take nothing against various defendants because of "her non-suit and abandonment of such claims" that were, or could have been, brought against those defendants. Stern argues that this

45

is erroneous, as her nonsuiting certain claims under Rule 162 of the Texas Rules of Civil Procedure, *see* TEX. R. CIV. P. 162 ("At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case or take a non-suit."), is not an abandonment of those claims under Rule 165, *see* TEX. R. CIV. P. 165 ("A party who abandons any part of his claim or defense, as contained in the pleadings, may have that fact entered of record."). Stern concedes that, "in some circumstances the nomenclature might be immaterial," but argues that that such is not the case here, given her pending claims in California at the time of the nonsuit and the California court's reliance on the probate court's judgment to dismiss her claims in California.

Appellees argue that the judgment does not specifically identify the claims that it deems abandoned, such that the abandonment findings "do not have the effect Stern fears of preventing Vickie from recovering on her claim against Pierce in California." They point to this Court's observation that the difference between a nonsuit and abandonment is "largely academic, because it is a rare situation in which a defendant is harmed by such action." *C/S Solutions, Inc. v. Energy Maint. Servs. Group LLC*, 274 S.W.3d 299, 307 n.7 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Finally, they contend that we should not disturb the judgment because the "practical effect of either designation is the same – any claim Vickie had concerning J. Howard's estate was foreclosed and could not be brought later

46

because the estate was closing and the probate court had exclusive jurisdiction over those claims."

The parties appear in agreement that Vickie nonsuited certain claims, and that the reference to abandonment in the judgment is not correct. The parties focus on the impact of the abandonment language, and disagree about whether it caused the California court to rule that her tortious interference claim against Pierce in California was precluded by the Texas probate court's judgment. It is not within our purview to assess the effect of a Texas judgment on a California court proceeding. Rather, we only determine whether there is error in the judgment we are reviewing on appeal. Given Stern's argument that this case presents the rare situation in which this misnomer matters (the correctness of which we do not opine), as well as the parties' agreement that judgment's reference to "abandonment" of claims is erroneous, we reform the judgment to eliminate the phrase "and abandonment" from paragraphs 3.26, 2.27, 2.28, 3.29, 3.31, 3.32, and 3.33 of the judgment, and to replace the word "abandoned" with "nonsuited" in paragraph 3.24. *See* TEX. R. APP. P. 43.2(b); *see also In re Estate of Tyner*, 292 S.W.3d 179, 283 (Tex. App.—Tyler 2009, no pet.) ("We have the authority to modify incorrect judgments when the necessary information is available for us to do so."); *Monk v. Pomberg*, 263 S.W.3d 199, 208 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("When an appellant raises an issue challenging a matter that may be

resolved by the modification of the trial court's judgment, a court of appeals may modify the trial court's judgment.").

## C. Compulsory Counterclaims

Stern contends that the probate court erred in entering "judgment that Vickie take nothing against Pierce individually as to any claims that should have been brought against him as 'compulsory counterclaims,' including claims relating to J. Howard's intent to make a gift to Vickie from his property during his life." Stern argues that the judgment is worded such that it renders judgment against Vickie on her tortious interference claims that were pending in California. Stern asserts that these claims cannot be compulsory counterclaims in Texas probate court because the claims were already pending in California. TEX. R. CIV. P. 97(a) (claims pending elsewhere are not compulsory counterclaims). Finally, Stern complains that the findings in the probate court's judgment related to compulsory counterclaims are unlawfully vague and run afoul of the purpose of a judgment: "to define in clear, specific and unambiguous terms the duties or obligations imposed upon a party."

Stern's complaints are specifically lodged at the following recitations in the judgment:[3]

---

[3] Stern also complains of the language of paragraph 3.2, but that section of the judgment does not relate to counterclaims.

3.1. This Court has exclusive and dominant jurisdiction over (1) all claims regarding the property owned by J. Howard Marshall II; (2) the Last Will and Testament of J. Howard Marshall II, dated the 22nd day of December 1992; (3) the Codicil to Last Will and Testament of J. Howard Marshall II, dated the 11th day of June 1993; ( 4) the Amended and Restated Living Trust Indenture dated the 13th day of July 1994; (5) all prior wills, codicils, and trusts executed by J. Howard Marshall II; (6) all affirmative claims and all filed and possible compulsory counterclaims raised by J. HOWARD MARSHALL III and VICKIE LYNN MARSHALL; and (7) all plaintiffs' and defendants' claims raised and that could have been raised against the Estate of J. Howard Marshall II, concerning the making of any *inter vivos* or testamentary gift or transfer by J. Howard Marshall II of any of his property.

3.34. The Court finds that any and all claims by VICKIE LYNN MARSHALL against the Estate of J. HOWARD MARSHALL II or against the property in the J. Howard Marshall, II, Living Trust, including but not limited to claims that J. HOWARD MARSHALL II intended but failed to give her or to leave her any portion of such property during his life or upon his death, were required by law to have been asserted as compulsory counterclaims in this proceeding pursuant to TEX. R. CIV. P. 97. The Court further finds that the jury answered the foregoing questions that J. HOWARD MARSHALL II possessed mental capacity as required by law when he executed the Amended and Restated Living Trust indenture dated the 13th day of July 1994 and that the jury has failed to find that said execution was procured through undue influence exercised by E. PIERCE MARSHALL. The Court further finds that the jury answered the foregoing questions that J. HOWARD MARSHALL II possessed testamentary capacity as required by law when he executed the Last Will and Testament of J. Howard Marshall, II, dated the 22nd day of December 1992, and that the jury has failed to find that said execution was procured through undue influence exercised by E. PIERCE MARSHALL. The Court further finds that all defendants are also entitled to a take-no thing judgment based on any claim that VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH, should have made in this proceeding as a compulsory counterclaim.

3.35. IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED by the Court as a matter of law that VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH, does not possess any interest in and is not entitled to possession of any property within the Estate of J. HOWARD MARSHALL II or any property of the J. Howard Marshall, II, Living Trust because of any representations, promises, or agreements made by J. HOWARD MARSHALL II to or with VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH;

3.36. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED by the Court as a matter of law that any and all claims that have been or should have been asserted by VICKIE LYNN MARSHALL A/K/A ANNA NICOLE SMITH, based upon alleged representations, promises, or agreements made by J. HOWARD MARSHALL II to or with VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH, have been disposed of in this proceeding;

3.37. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED by the Court that J. HOWARD MARSHALL II did not intend to give and did not give to VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH, a gift or bequest from the Estate of J. HOWARD MARSHALL II or from the J. Howard Marshall, II, Living Trust either prior to or upon his death; and

3.38. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED by the Court that VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH, shall take nothing from any claim that she should have made in this proceeding as a compulsory counterclaim against any of the following persons and/or legal entities: 1. E. Pierce Marshall;

Appellees respond that Stern's reading of the judgment is wrong and that none of these provisions can be interpreted to mean that Vickie's tortious interference claims against Pierce were compulsory counterclaims in the Texas probate court. According to appellees, Vickie's tortious interference claims in California were foreclosed by "the numerous declarations in the probate judgment

50

that validated J. Howard's estate plan, not because tortious interference was compulsory in the probate court." Appellees also note that the judgment recitations dealing with claims against Marshall II's estate or Living Trust cannot operate to foreclose against a tort claim against Pierce individually. As for recitations dealing with claims against Pierce individually, appellees argue that—because this is a probate proceeding—the compulsory counterclaims referred to should be interpreted as limited to "claims related to the estate." Finally, Appellees dispute that the judgment is vague and argue that the probate court was not required to identify specifically what claims should have been brought in the probate proceeding.

We agree with appellees that the trial court's rendering judgment on any of Vickie's claim against *Marshall II's estate* or *Living Trust* cannot purport to adjudicate or foreclose Vickie's tortious interference claims against *Pierce*. As the Supreme Court recognized in holding that the probate exception to federal jurisdiction did not preclude the federal courts from exercising jurisdiction over her claims, Vickie's tortious interference claims do not seek judgment to recover property in the probate court's "custody," *Marshall v. Marshall*, 547 U.S. 293, 296–97, 126 S. Ct. 1739–10 (2006); rather, these claims seek damages from Pierce individually. Thus, it necessarily follows that the probate court's recitation in the judgment that any claims against the estate or Living Trust were compulsory

51

counterclaims in the underlying proceeding cannot render Vickie's tortious interference claims against Pierce individually compulsory counterclaims. We reject Stern's contrary interpretation.

The judgment's recitation that "[t]his [Probate] Court has exclusive and dominant jurisdiction over . . . all claims regarding the property owned by J. Howard Marshall II, . . . [and] all affirmative claims and all filed and possible compulsory counterclaims raised by . . . VICKIE LYNN MARSHALL" is, however, an overly broad statement of the trial court's jurisdiction, reserving to the Texas probate court exclusive jurisdiction over torts and probate claims alike without regard for whether those claims were subject to a prior proceeding elsewhere. This is erroneous. *See Marshall*, 547 U.S. at 313–14, 126 S. Ct. 1740 ("Texas may not reserve to its probate courts the exclusive right to adjudicate a transitory tort."). Accordingly, paragraph 3.1 of the judgment is modified to read,

3.1. This Court has exclusive and dominant jurisdiction over (1) all claims to ~~regarding~~ the property owned by J. Howard Marshall II; (2) the Last Will and Testament of J. Howard Marshall II, dated the 22nd day of December 1992; (3) the Codicil to Last Will and Testament of J. Howard Marshall II, dated the 11th day of June 1993; ( 4) the Amended and Restated Living Trust Indenture dated the 13th day of July 1994; (5) all prior wills, codicils, and trusts executed by J. Howard Marshall II; and (6) ~~all affirmative claims and all filed and possible compulsory counterclaims raised by J. HOWARD MARSHALL III and VICKIE LYNN MARSHALL; and (7)~~ all plaintiffs' and defendants' claims and compulsory counterclaims raised and that could have been raised against the Estate of J. Howard Marshall II, concerning the making of any *inter vivos* or testamentary gift or transfer by J. Howard Marshall II of any of his property.

**D. The Verdict and Judgment**

Stern contends that several of the probate court "findings" were erroneous, as they are not supported by the only jury finding relating to Vickie at trial—the finding that Vickie "did not have an agreement with J. Howard Marshall II that he would give her one-half of all his property." Specifically, Stern complains that this single finding does not "support the probate court's "broad findings, such as that Vickie 'take nothing' against Pierce individually," and that "her husband 'did not intend to give' her a gift 'prior to' his death." Stern thus asks us to reverse the numerous factual findings in the jury he argues were not supported by the jury's verdict. *See Saden v. Smith*, 415 S.W.2d 450, 470 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (holding it was error to include "fraud, defalcation, and embezzlement" findings in the judgment because these claims were not included in the pleadings, and not all the elements were submitted to the jury); *Freedman v. Briarcroft Prop. Owners, Inc.*, 776 S.W.2d 212, 218 (Tex. App.—Houston [14th Dist.] 1989, writ denied) (concluding that finding in order was "beyond the scope of the jury's verdict" reforming order to delete language, and affirming as modified).

Appellees disagree that the verdict does not support the judgment, and argue that all the findings must be viewed together to determine what the jury found with regard to Marshall II's property and estate plan.

We have reviewed all the paragraphs cited by Stern, and reject the arguments aimed at the recitations addressing (1) compulsory counterclaims (which we have held do not include the tortious interference claims against Pierce), (2) allegedly abandoned claims (which we have reformed to indicate they were nonsuited), and (3) Vickie's claim to assets in the estate or Living Trust (which are separate from claims against Pierce's individual assets). The only remaining finding that can be read to sweep too broadly is the declaration that any and any and all claims that "have or should have been asserted" by Vickie "based upon alleged representations, promises, or agreements made by J. Howard Marshall II to or with" Vickie have been "disposed of in this proceeding." We accordingly reform the following recitation to include the limiting language found elsewhere in the judgment,

> 3.36. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED by the Court as a matter of law that any and all claims <u>against the Estate of J. HOWARD MARSHALL II or against the property in the J. Howard Marshall II, Living Trust</u> that have been or should have been asserted by VICKIE LYNN MARSHALL A/K/A ANNA NICOLE: SMITH, based upon alleged representations, promises, or agreements made by J. HOWARD MARSHALL II to or with VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH, have been disposed of in this proceeding.

We otherwise reject Stern's contention that "the judgment is too vague and indefinite to be enforceable" and, as such, the "Final Judgment cannot stand."[4]

## ATTORNEYS' FEES

Finally, Stern argues that the attorneys' fees awarded against Vickie were erroneous and should be reversed. Only three questions presented to the jury involved attorneys' fees. The first asked the jury to find "necessary expenses and disbursements, including reasonable attorneys' fees, expenses and costs including fees paid to expert witnesses, incurred by Pierce Marshall in defending J. Howard Marshall, II's December 22, 1992 Will for the purpose of having the Will admitted to probate?" The jury found trial legal fees of $833,000.00 and conditional appellate fees of $400,000.00 for an appeal to the Court of Appeals, and $89,000.00 for an appeal to the Texas Supreme Court.

The second question asked the jury to find "necessary expenses and disbursements, including reasonable attorneys' fees, expenses and costs including

---

[4] The parties devote significant portions of their respective briefs arguing about the effect of the probate court's judgment in the California litigation, with Stern contending that the judgment was used to improperly foreclose Vickie's California claims, while appellees urge that we should not disturb the probate judgment because "it needs to be remembered that what Stern actually seeks is not truly any relief in the Texas probate court, but merely the opportunity to take yet another shot at relief in the federal courts in California." Given these arguments, we reiterate that although we have made some reformations of the judgment, our review has been limited to assessing the correctness of the judgment. We do not ascribe any legal significance to those particular modified finding, nor should our modification be read to endorse or repudiate anyone's view of the scope of the original judgment or judgment as reformed here.

fees paid to expert witnesses, incurred by trustees Finley Hilliard and Ken Farrar in defending J. Howard Marshall, II's December 22, 1992 Will for the purpose of having the Will admitted to probate?" The jury found trial legal fees of $147,500.00 and conditional appellate fees of $200,000.00 for an appeal to the Court of Appeals, and $44,500.00 for an appeal to the Texas Supreme Court.

The third question asked the jury to find the "necessary expenses and disbursements, including reasonable attorneys' fees, expenses and costs, incurred by the Temporary Administrator, Robert S. Macintyre, Jr.?" The jury answered $1,200,000.00.

The probate court's judgment contains an award to Pierce consistent with the jury's verdict on the cost of defending Marshall II's will:

> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED by the Court that E. PIERCE MARSHALL have and recover from the ESTATE OF J. HOWARD MARSHALL II attorneys' fees in the sum of EIGHT HUNDRED THIRTY-THREE THOUSAND AND N0/100 DOLLARS ($833,000.00) for services rendered through the trial of this cause. In the event of an appeal by J. HOWARD MARSHALL III to the court of appeals, if such appeal is unsuccessful, E. PIERCE MARSHALL will be further entitled to recover FOUR HUNDRED THOUSAND AND N0/100 DOLLARS ($400,000.00) from the ESTATE OF J. HOWARD MARSHALL II as additional reasonable attorneys' fee. In the event of an appeal by J. HOWARD MARSHALL III to the Supreme Court of Texas, if such appeal is unsuccessful, E. PIERCE MARSHALL will be further entitled to recover EIGHTY-NINE THOUSAND AND N0/100 DOLLARS ($89,000.00) from the ESTATE OF J. HOWARD MARSHALL II as additional reasonable attorneys' fees;

The judgment also contains an award of attorney's fees to Pierce from Vickie on Pierce's declaratory judgment action:

> The Court finds that, pursuant to the Uniform Declaratory Judgment Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.009 (Vernon 1987), E. PIERCE MARSHALL is entitled to an award of his reasonable and necessary attorneys' fees as is equitable and just against VICKIE LYNN MARSHALL A/K/A ANNA NICOLE SMITH. The attorneys' fees awarded herein against VICKIE LYNN MARSHALL A/K/A ANNA NICOLE SMITH are solely and exclusively based upon evidence relating to the attorneys' fees incurred during the trial which occurred in this cause between September 18, 2000 and February 18, 2001.

> IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED by the Court that E. PIERCE MARSHALL have and recover from VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH, attorneys' fees in the sum of FIVE HUNDRED FORTY-ONE AND N0/100 DOLLARS ($541,000.00) for services rendered through the trial of this cause. In the event of an appeal by VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH, to the court of appeals, if such appeal is unsuccessful, E. PIERCE MARSHALL will be further entitled to recover ONE HUNDRED THOUSAND AND N0/100 DOLLARS ($100,000.00) from VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH, as additional reasonable attorneys' fees. In the event of an appeal by VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH, to the Supreme Court of Texas, if such appeal is unsuccessful E. PIERCE MARSHALL will be further entitled to recover ONE HUNDRED THOUSAND AND N0/100 DOLLARS ($100,000.00) from VICKIE LYNN MARSHALL, A/K/A ANNA NICOLE SMITH, as additional reasonable attorneys' fees;

Stern first argues that this award was erroneous because "the declaratory judgment action on which such fees and costs are based is improper." Because we have rejected Stern's argument that appellees did not have a proper declaratory

judgment action, we likewise reject the argument that the Declaratory Judgment Act did not provide a basis for an attorneys' fee award. *See* TEX. CIV. PRAC. & REM. CODE § 37.009 (providing that "the court may award costs and reasonable and necessary attorney's fees as are equitable and just" in proceeding under Declaratory Judgment Act).

Stern next argues that the "determination of the amount of reasonable and necessary attorneys' fees under the Act presented issues of fact that were required to submitted to the jury." Stern asserts that "Pierce's failure to request and submit any such issues against Vickie waives his claim for attorneys' fees against her." Appellees respond that the court was permitted to award attorneys' fees against Vickie as a matter of law because "they are conclusively established by the evidence" and because "Vickie did not object to the fact that the jury was not being charged on the reasonableness and necessity of the fees, thus waiving that argument for the purposes of Stern's appeal." We agree with Stern that Pierce waived recovery of attorneys' fees from Vickie by failing to request submission of that issue to the jury.

The judgment identifies each claim that the trial court resolved as a matter of law in response to a motion for summary judgment, directed verdict, or judgment notwithstanding the verdict. While appellees insist that the trial court decided the issue of Pierce's entitlement and the amount of attorneys' fees from Vickie as a

58

matter of law, such a determination was never requested, and the trial court's judgment instead categorizes the attorney's fees award against Vickie as being based on the jury's verdict.[5]

"Whether attorney's fees are reasonable and necessary are fact issues that must be submitted to a jury." *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex. 1998). Failure of the party seeking fees to request a jury submission "regarding the reasonableness and necessity of" attorneys' fees waives that recovery. *RDG P'Ship v. Long*, 350 S.W.3d 262, 277 (Tex. App.—San Antonio 2011, no pet.). Thus, because it is appellees who sought attorney's fees, Vickie did not waive—by failing to object—her complaint about the trial court awarding attorneys' fees without a finding by the jury that the fees awarded were reasonable and necessary. TEX. R. APP. P. 279. It was Pierce's burden to seek a jury finding on the issue, and he is the party that accordingly waived the issue. *RDG P'Ship*, 350 S.W.3d at 277; *see also Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 821 (Tex. 2012) (affirming court of appeals' holding that prevailing party at trial was not entitled to a new trial on attorneys' fees because that party failed to object to trial court's

---

[5]   The judgment is separated in sections entitled: (1) Appearances, (2) Dispositions Prior to Trial (identifying specific settlements and interlocutory summary judgments), (3) Trial of the Case (identifying directed verdicts granted and nonsuits, as well as awards entered on the jury's verdict), (4) Motion for Judgment Notwithstanding the Verdict (identifying those granted and denied), (5) Sanctions Motions, and (6) Reconsideration of Discovery Sanctions. The attorney's fees awarded against Vickie are in the section identifying claims entered on the jury's verdict.

inadvertent omission of certain categories of attorneys' fees from the jury charge). We reverse the attorneys' fees awarded to Pierce from Vickie and render judgment that Pierce take nothing on that claim.

## CONCLUSION

We reverse the attorneys' fees awarded to Pierce from Vickie and render judgment that Pierce take nothing on that claim. We reform the remainder of the judgment and affirm the judgment as modified.

All pending motions are dismissed as moot.

 
 

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.